[L. A. No. 1552.  Department One.—September 16, 1904.]

## JAMES B. COOK, Respondent, v. COLUMBIAN OIL, ASPHALT, AND REFINING COMPANY, Appellant.

CONTRACT TO BORE FOR OIL—CONSTRUCTION—PRICE PER FOOT—PAYMENT FOR HOLE ABANDONED BY CONSENT—PREVENTION OF DRILLING.—A contract to bore two thousand feet of well-holes in the oil-lands of the defendant, under a scale of prices per foot, is to be construed according to its plain common-sense meaning, as gathered from all of its parts read together, and where so construed it means that the plaintiff should be paid at a fixed price per foot for each and every foot of hole sunk by him in an honest endeavor to carry out the contract. He is entitled to payment for sinking a hole five hundred and eighty feet, which was abandoned by consent of the parties, by reason of a broken stem, or bit, upon which there was a cave of one hundred and fifty feet, preventing further drilling therein.

ID.—BREACH OF CONTRACT—FAILURE TO PROVIDE CASING—PREVENTION OF WORK—ACTION FOR BALANCE DUE.—Where by the terms of the contract the defendant, as owner of the land, was to provide all necessary casing-pipe, and he failed after demand by the plaintiff, as driller, to deliver the kind of pipe demanded, without which plaintiff could not continue to sink a fourteen-hundred-and-twenty-foot well to a greater depth, the plaintiff, after waiting three months without such delivery, was authorized to consider further work as prevented by the fault of the defendant, and to maintain an action for the balance due for drilling done at the fixed price per foot.

ID.—INTENTIONS OF PARTIES—DUTY OF DEFENDANT.—Whatever may have been the intentions, or good faith, of the respective parties, or want of such good faith, those questions are not for this court to determine; and in any event it must be held that it was the duty of the defendant before it could place the plaintiff in default to furnish and deliver on the ground the necessary casing-pipe for the further prosecution of the work.

APPEAL from a judgment of the Superior Court of Santa Barbara County.  J. W. Taggart, Judge.

The facts are stated in the opinion.

F. M. Parcells, and C. A. Storke, for Appellant.

W. P. Butcher, for Respondent.

COOPER, C.—This action was brought to recover a balance claimed to be due plaintiff for boring and drillings holes

or wells in the lands of defendant under a written contract. The case was tried with a jury, and a verdict returned for plaintiff in the sum of twenty-seven hundred dollars. A motion for a new trial was denied, and this appeal is from the judgment and the order denying a new trial.

The appeal involves two propositions upon which appellant relies.

The first is as to whether or not plaintiff is entitled to recover under the contract for one hole bored to a depth of five hundred and eighty feet; and the second is as to whether the plaintiff was prevented by the fault of defendant from boring the second hole or well more than fourteen hundred and twenty feet in depth. There is no dispute as to the facts that plaintiff bored or drilled two holes in the lands of defendant, of five hundred and eighty feet and fourteen hundred and twenty feet, respectively, and that if the plaintiff is entitled to recover for each foot of hole bored, the verdict is for the correct amount of the balance due to plaintiff.

It will be necessary to set forth the parts of the contract material to the controversy, plaintiff being the party of the second part, which are as follows:—

"First—That the party of the second part will furnish at his own cost and expenses all the machinery, tools, paraphernalia and materials of all kinds, including labor, fuel, water, and any and all things of whatsoever kind and nature that may be necessary and needful (except casing, pipe, and shoes) to properly perform the work of drilling or boring not less than 2,000 feet of holes or wells, and to drill or bore the same at any one or more places on the said property as may be desired and designated by the party of the first part, for the agreed price per each foot depth sunk, as shown and set forth in the following scale of prices, at different depths up to 2,000 feet and in accordance with the further terms and conditions herein contained. . . .

"Provided, however, that in case of the drilling of any well shall be stopped by the party of the first part for any cause after it has been begun, that the party of the first part will pay the net cost of moving the drilling outfit to any other place on the property where another well is to be started, in addition to the amount earned for the number of feet sunk, in accordance with the said scale of prices per foot; and that should work be stopped on any well for any cause after a

depth of 400 feet has been sunk then the said party of the second part shall move the rig at his own cost and expense to the place designated by the party of the first part.

"Second—That in case of abandonment of any well or wells for any cause, the party of the second part will pull and remove in a careful manner all casing, pipe, and fittings used in said well or wells, that can be got out by a reasonable and faithful effort, by the use of all appliances and tools ordinarily used in performing such work.

"Third—That all casing-pipe and shoes of the proper sizes necessary to be used in the well or wells will be furnished and delivered on the ground by the party of the first part and that it shall be of such sizes as it may select, and the same shall be properly inserted and used in.the wells by the party of the second part, and carried to the bottom if possible without diminishing the size, except in cases where it is found absolutely unavailable after the use of under-reamers, and other appliances, as may be necessary and proper for keeping the hole in proper shape and condition.

"Fourth—That in case a body of asphaltum be encountered at any considerable depth, and it is found impossible after a faithful and reasonable effort so to do, that it cannot be drilled through nor penetrated by the use of any of the known tools and appliances, then the said well will be considered as completed and a settlement made in full for the depth drilled according to the said scale of prices; provided, however, that the party of the first part shall have full and free right and privilege to use and operate the machinery and outfit of the party of the second part at its own cost and expense for a period not to exceed ten days in making a further effort to sink the well or until satisfied that the hole cannot be sunk any deeper. . . .

"Sixth—That in case oil, gas, or asphaltum shall be found at any depth in any well, and the party of the first part shall elect to stop the drilling in such well, the party of the second part shall properly test the well and leave the same in condition ready for the pump or other working appliance before moving the rig and outfit away.

"Seventh—It is understood by and between both parties hereto that this contract is for a total of 2,000 feet of hole or wells, and that the party of the second part agrees to put down any one hole to a total depth of 2,000 feet, if the ground

is such that it can possibly be done, by reasonable effort, or that he will stop the drilling of any well at any depth, as directed by the party of the first part, and in accordance with the said scale of prices per foot sunk, and the terms and conditions herein contained.

"Eighth—That the party of the first part will pay or cause to be paid to the party of the second part the amount earned for each foot of hole sunk, in accordance with the said scale of prices at times and as follows, to wit: An advance sum of $250 (two hundred and fifty dollars) when the rig and outfit is on the ground and ready to commence the work of drilling; seventy per cent of the amount earned as per scale when the well has been sunk to a depth of two hundred (200) feet, and a like seventy per cent of the amount earned at the completion of each two hundred feet until the well is either completed or abandoned, or the work stopped by the party of the first part, when the balance in full shall be paid after deducting the said advance payment of $250."

After the plaintiff had bored the first hole to a depth of five hundred and eighty feet, because of a broken stem, or bit, the well could not be drilled deeper, as it caved in on the bit one hundred and fifty feet. After discussing the matter with Mr. Ayres, the defendant's superintendent, and upon his advice, plaintiff abandoned the five-hundred-and-eighty-foot hole, and moved his machinery a short distance away for the purpose of commencing the second well or hole. It is conceded in the appellant's brief that this five-hundred-and-eighty-foot well was "abandoned because of an accident which made it impossible to go further."

We think the plaintiff is entitled under the contract to be paid for this five hundred and eighty feet of hole. The contract provides for "not less than 2,000 feet of holes or wells." The scale of prices is "per foot sunk," and under the eighth clause of the contract the plaintiff is to receive "the amount earned for each foot of hole sunk in accordance with the said scale of prices." It is expressed in the contract that if the drilling shall be stopped by defendant before a depth of four hundred feet has been sunk in any one hole that it will pay the cost of moving the drilling outfit to any other place, "in addition to the amount earned for the number of feet sunk in accordance with said scale of prices per foot." Then follows the provision "that should work be stopped on any

well for any cause after a depth of 400 feet has been sunk then the said party of the second part shall move the rig at his own cost and expense to the place designated by the party of the first part.''

It is evident that the above-quoted clauses meant that plaintiff should be paid the schedule price for any well or hole sunk, but that he should not be required to pay the expense of moving the rig if he was prevented by defendant from boring four hundred feet in any one place. If this is not the correct construction of the contract, the plaintiff would be entitled to full pay and the expense of moving his machinery for a well four hundred feet deep or less, but for any well or hole over four hundred feet deep he would receive nothing, and have to move the machinery at his own expense besides, unless the well could not be drilled by reason of encountering a body of asphaltum as provided for in section four of the contract.

Section six provides that in case of discovery of oil or asphaltum at any depth, the defendant may elect to stop the further drilling in such hole or well. No provision is made in the said section as to compensation to plaintiff in such case, but clearly the contract contemplates that the plaintiff shall be paid the prices fixed in the schedule per foot for each foot sunk. If plaintiff had acted in bad faith, or had attempted of his own volition to drill holes or wells of only a few feet in depth, so as to make up two thousand feet of holes or wells, a very different question would arise, but such claim is not made. On the contrary, the contract provides that plaintiff, if desired by defendant, shall put down any one hole to a depth of two thousand feet, if the ground is such that it can possibly be done by reasonable effort, or that he will stop drilling any well at any depth if so directed by defendant. The eighth clause provides that plaintiff shall be paid ''the amount earned for each foot of hole sunk.'' We must construe the contract according to its plain common-sense meaning as gathered by reading it all together and each and every clause. When so construed it means that plaintiff should be paid at a fixed price per foot for each and every foot of well or hole sunk by him in good faith, in an honest endeavor to carry out the contract. Of course, if plaintiff, by his own fault or negligence, or by reason of not having proper machinery, had bored a hole a short distance, and for such reason

had to abandon it, the loss would be his. But no such question is here presented. The plaintiff appears to have had experience in boring oil-wells; his machinery is not claimed to have been unfit for the business in which he was engaged. The contract was evidently made with the view of sinking holes for the purpose of discovery. Defendant did not know how deep it would want any one well, nor how many it would desire to have bored. If plaintiff had bored a well nineteen hundred and ninety feet, and had been compelled to abandon it by reason of many contingencies that might have happened, appellant claims that it would not be responsible, unless it had directed plaintiff to stop drilling, or unless the body of asphaltum mentioned in section four had been encountered. If such is the meaning of the contract, what would become of the advance payments provided for in section eight? What in such case would be the meaning of that part of section eight which provides that if the well is completed or abandoned, or the work stopped by the defendant, the balance in full shall be paid? The five-hundred-and-eighty-foot well was abandoned for a good reason, and with the consent of defendant.

As to the second proposition there is evidence sufficient to justify the implied finding of the jury to the effect that plaintiff was prevented from sinking the fourteen-hundred-and-twenty-foot well to a greater depth, by reason of the failure of defendant to supply the kind of casing necessary. Plaintiff testified that it was not, in his opinion, possible to put the eight-inch casing which he had been using down to any greater depth; that he so informed the officers of defendant and asked for six-inch drive-pipe; that defendant never furnished him with the necessary six-inch pipe; that he could go no deeper without it. Plaintiff also made a written demand upon defendant for the six-inch pipe. In a letter, dated March 11, 1903, defendant, in answer to the written demand, stated as follows: "That the company is in control of a large amount of 6-inch drive-pipe now at Summerland and I will order a shoe for the same immediately to be sent down. And will keep this drive-pipe ready to be delivered on the ground in a few hours in case it is required and deemed advisable." In this same letter, after calling the plaintiff's attention to the provisions of the contract authorizing defendant to select the size of the pipe, defendant stated: "When it has been

established by the use of all means described in the contract that it is impossible to continue the well with $11\frac{5}{8}$ casing further we will then decide after carefully considering the nature of the material passed through at the bottom of the well just what the next size of casing to be used shall be. If it is decided to use 6-inch drive-pipe, we are already provided with sufficient to begin the work and can deliver it on the ground in a few hours.''

Defendant never delivered the six-inch pipe on the ground. It did not attempt to show that it was possible for plaintiff to have continued with the sized casing that he had been using.

Plaintiff testified: "I waited from February 24th to April 28th for the company to furnish the 6-inch drive-pipe and they never did furnish it."

Appellant claims that plaintiff had sold his tools, and was not in a position to go on with sinking the well, even if the pipe had been placed upon the ground, and that his demand was only for the purpose of putting the defendant in default. On the contrary, plaintiff claims that defendant, not having found oil, had decided to abandon further work, and that it never intended in good faith to furnish the pipe when it demanded the further sinking of the well.

As to the intentions of the parties or their good faith in respect to these matters, it is not for us to determine.

Plaintiff testified that he retained the right to use the outfit to finish the well if he desired it. In any event, we must hold that it was the duty of the defendant, before it could place plaintiff in default, to "furnish and deliver on the ground" the necessary casing-pipe for the further prosecution of the work on the fourteen-hundred-and-twenty-foot well. If the construction we have placed on the contract is correct, the court did not err in its instructions to the jury.

We advise that the judgment and order be affirmed.

Harrison, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

                          Shaw, J., Van Dyke, J., Angellotti, J.

Hearing in Bank denied.