[Civ. No. 2042. Third Appellate District.—October 14, 1919.]

JANNETT ASELS, Respondent, v. DAVID ASELS, Appellant.

[1] PARTITION—WAIVER OF RIGHT BY CONTRACT—BREACH OF CONTRACT BY JOINT TENANT—REVIVAL OF RIGHT.—While the right to partition conferred by section 752 of the Code of Civil Procedure may be waived by agreement, a joint tenant who enters into such an agreement, in consideration of a covenant and agreement on the part of the other joint tenant to farm the land and to keep an

---

1. Validity of agreement against right to partition, note, 16 L. R. A., 220.

accurate and intelligible account accessible to the former of all receipts and expenditures, is released from any legal or moral obligation to carry out his promise or covenant upon the failure of the other joint tenant to keep his agreement.

APPEAL from a judgment of the Superior Court of San Joaquin County. George F. Buck, Judge. Affirmed.

The facts are stated in the opinion of the court.

Arthur L. Levinsky and Clarence E. Fleming for Appellant.

C. W. Miller for Respondent.

BURNETT, J.—The action was for partition of 640 acres of land in San Joaquin County, which in 1906 was purchased in the joint names of plaintiff and defendant with money which was partly community and partly the separate money of the plaintiff, but the moneys had been so intermingled that it was held by the trial court to have become community property. The court ordered a partition of the land and from the final decree of partition this appeal has been taken. The only defense to the action grew out of and was based upon an agreement in writing made by the parties on the twentieth day of October, 1916. Said agreement recited that plaintiff and defendant were the owners of the land (describing it) and that there had been a misunderstanding and disagreement between them as to the distribution of the money received from the crops raised on said land, and that they had consulted with their respective counsel and had agreed upon, "and do hereby agree upon the following: 1. That there shall be no division or partition between the parties hereto, of the hereinbefore described land and premises."

Paragraphs 2 and 3 of said agreement related to certain moneys in the possession of the Fabian-Grunauer Company and moneys deposited in the Bank of Tracy in the name of either or both of the parties to the agreement; being moneys received for the sale of grain raised on said land during the farming season of 1915 and 1916, and it provided that these moneys should be divided equally between said parties and that said division should constitute a full and final settlement as to all matters between them after the date of the agreement.

Paragraph 4 is as follows: "It is mutually contracted and agreed by and between the parties hereto that the said David Asels shall farm the hereinbefore described land, as he has done in the past, and he shall keep a book wherein shall be truly set forth all expenditures made by him, which said book shall always be accessible to the said Jannett Asels, and any matters therein set forth which she does not understand, shall be fully explained to her by the said David Asels, and she shall be informed of all costs and expenses of farming, and upon a sale of the crops each year, there shall be deducted from the amount realized from said sales all of the aforesaid expenses, and the balance of the moneys realized, each year, from the sale of crops raised on the aforesaid lands, shall be divided equally among and between the parties hereto, which said division shall be made upon the sale of said crops, each year."

The fifth paragraph recited that the said David Asels was the owner of the livestock and farming implements and machinery used in farming said land, and provided that he would make no charge for the use of the same "in and about the farming and harvesting of the crops raised on the aforesaid lands."

The sixth and concluding paragraph of said agreement provides "that the parties hereto being agreed among themselves to the foregoing, and then having consulted their respective attorneys in the presence of all the parties hereto, and of the said attorneys, and knowing the contents of this instrument, each of the parties hereto does freely and voluntarily execute this instrument which has been drawn, and is executed for the purpose of, and it does settle all matters of difference in regard to money matters, heretofore existing between the parties hereto up to this date."

In reference to this agreement the court found "that the said defendant David Asels did not keep and has not kept all of the terms and conditions on his part to be provided and kept as in said agreement provided, in this, that the said David Asels did not keep a book wherein should be truly set forth all expenditures made by him in the farming of said lands, and that no such book was always, or at all accessible to the said Jannett Asels, and no matters required to be set forth in said book which the said Jannett Asels did not understand, were fully, or at all explained to her by

the said David Asels, and she was not, and since the execution of said agreement has not been informed of all the costs or expenses of farming said lands, and the said defendant David Asels did not and has not upon a sale of the crops each year, deducted from the amount realized from said sales, all of the aforesaid expenses and divided equally between himself and plaintiff, the balance of the moneys realized each or either year from the sale of crops raised on the aforesaid lands, either upon the sale of said crops or at all.''

Then follows a finding that 350 sacks of barley raised on said premises in 1916 and 75 sacks in the year 1917 were sold by defendant and unaccounted for to plaintiff, and that plaintiff often demanded of defendant an accounting for the same, which he refused to give or render.

This finding of the court that he had failed to keep his covenant and agreement is attacked by the appellant on the ground that it is unsupported by the evidence. As to this, however, appellant is entirely in error. It is true there is a substantial conflict, but there is positive and unequivocal testimony on behalf of plaintiff in favor of the finding, and by that we are, of course, concluded. As to his failure to keep a book of accounts and render it accessible at all times to plaintiff it is sufficient to quote the following testimony of plaintiff: ''Q. Has he ever shown you any book of account since the date of this paper? A. No, sir. Q. Did you ask him in 1917? A. Yes, sir. Q. To see the account? A. Yes, sir. Q. What reply did he make? A. He said he hadn't any—had no book—didn't have to keep a book. Q. Don't you know Mr. Asels showed you—he had two books that he showed you on each occasion when you wanted to see them, and that he gave you a written statement and you examined it, and when he settled with you he wanted you to sign it and you refused? A. I never saw any of these books at all. I kept asking him time after time for those books. He said he had none; he didn't have to keep them. Q. Sure of that? A. Yes, sir.''

The evidence is equally as clear that the defendant failed to account for a large quantity of grain raised on said premises. It seems unnecessary to quote the testimony as to this, which is set out in the brief of respondent. It is true that plaintiff claimed that he overlooked the two lots of grain worth about one thousand one hundred dollars, but the

43 Cal. App.— 37

court no doubt believed that his concealment of the facts was deliberate and willful, and that it was his purpose to appropriate to himself plaintiff's one-half of the proceeds of said grain. The lower court also concluded that his failure to keep a book of account or to show it to plaintiff or to explain the items of expenses in regard to the farming of the land was also willful and deliberate, and that it was in pursuance of his purpose to appropriate a portion of the proceeds from the ranch to which plaintiff was rightfully entitled. In view of the familiar and well-established rule as to conflicting evidence, it would be altogether improper for an appellate court to hold that any of the findings of the lower court is unsupported.

[1] As to the legal effect and integrity of said agreement of October 20, 1916, little needs to be said. The right to partition was conferred upon either party by section 752 of the Code of Civil Procedure, but that this right may be waived is established by section 3513 of the Civil Code and by the decisions of the courts. The law upon the subject is summed up in Freeman on Cotenancy and Partition (second edition, section 442), as follows: "We have spoken of the right of partition as an absolute right incident to every species of cotenancy, . . . and as yielding to no considerations of hardship or inconvenience. In so speaking, we have had in view the law of cotenancy and partition as it exists independent of express or implied agreements between the respective parties in interest. There are cases from which it may be inferred that the right to partition cannot be waived, and that, to an application for partition, no other defense will be noticed by the courts than that the parties do not hold the property together undivided." The learned author thereupon cites cases apparently so holding, but concludes as follows: "But we think the decided preponderance of authority supports the proposition, that the general principle of law that the right to partition is absolute must be confined 'in its application to ordinary joint tenancies or tenancies in common, where the right to partition is left to result as an ordinary legal incident of such tenancy, and that it was never intended to interfere with contracts between the tenants modifying or limiting this otherwise incidental right, nor to render it incompetent for parties to make such contracts,

either at the time of the creation of the tenancy or afterward.' "

We think it equally plain that the consideration which moved plaintiff to agree that the land should not be divided was the promise on the part of the defendant to keep said books showing his expenditure in farming the land and to render them accessible and intelligible to her and also to account to her for all the grain raised upon said premises that should be sold by defendant. In other words, it cannot be successfully controverted that these covenants were mutual and concurrent and that upon the failure of either party to keep his agreement the other would be released from any legal or moral obligation to carry out his own promise or covenant. Any other construction of said agreement of October 20, 1916, appears unreasonable and opposed to the manifest intention of the parties. We are satisfied that the findings of the court are amply supported and that these findings warrant a judgment in favor of plaintiff.

The judgment is affirmed.

Ellison, J., *pro tem.,* and Hart, J., concurred.