[Civ. No. 15905.   Second Dist., Div. Two.   July 28, 1947.]

MARY LOUISE MIRANDA, Appellant, v. MAX A. MI-RANDA et al., Defendants; RUTH A. MIRANDA et al., Respondents.

62

E. A. Oppenheim for Appellant.

Newton E. Anderson and M. M. Miller for Respondents.

MOORE, P. J.—By this action appellant sued her former husband for partition of Lot 31, Block B of Sherman Subdivision, Los Angeles County. By his cross-complaint respondent, Max A. Miranda, alleged that pending the action for divorce, on September 7, 1943, and prior to entry of the interlocutory decree the parties executed a writing whereby they settled all differences with respect to their property and the custody of their children; that the lot "was to be held in the names of said parties so long as the cross-defendant and the minor children . . . should occupy the premises as a home, and that if thereafter the cross-defendant should enter into another marriage the said property should be sold . . . and that the funds realized therefrom shall be used for the

support and maintenance of said minor children . . . at the rate of $50 per month." The children intervened with the same declaration. Upon the issue thus raised the court decided in conformance with the agreement and respondent's contentions and denied partition.

The pertinent provisions of the property settlement are the following:

"(3) Second party covenants and agrees that First party have the right to the exclusive use and occupation of the family home located at 830 N. Clark St., West Hollywood, California, so long as she does not re-marry; said use and occupation to include the furniture, fixtures, linens, dishes and all articles now in use in said household. Second party agrees to make the monthly payments on said real property amounting to $25.00 per month and in addition to pay when due all taxes or assessments levied upon said property, furniture and fixtures. It is agreed that said property shall remain in the names of the parties hereto as 'joint tenants' so long as First party does not remarry and as long as said property is occupied by First party as a home for herself and the children of the parties hereto.

"(4) That this agreement is made and entered into in contemplation that the action of divorce heretofore instituted by First party against Second party shall ripen into a final decree, duly entered in the Office of the County Clerk of the County of Los Angeles, State of California, and if First party shall thereafter enter into another marriage then said property shall be sold, . . . the funds realized therefrom shall be used for the support and maintenance of said minor children of the parties hereto, said sum to be allowed and expended at the rate of fifty ($50.00) dollars per month. That during the period of time said money is being expended, Second party shall be relieved from any further payments for the support of said minor children. That when the funds so realized from the sale of the above mentioned property is exhausted, then Second party shall resume the payments hereinafter provided for the support of said minor children. . . .

"(9) The parties hereto agree that they will live separate and apart from and after the execution of this agreement and that in the event of a reconciliation between the parties hereto this agreement shall continue in full force and effect without abatement of any term or provision hereof unless by written agreement duly executed by each of said parties after the date of said reconciliation. . . .

"(11) In consideration of the execution of this mutual agreement First party hereby waives from the Second party all demands for alimony either temporary or permanent it being understood that this settlement is a total and complete release of the Second party by First party of all matters and charges whatsoever, and that except as herein provided, the First party shall after this settlement require nothing whatsoever from the Second party as though the marriage relationship has never existed between them. . . ."

Among the findings appear the following: By the settlement the title of the lot was to remain in the names of the parties as joint tenants so long as the wife does not remarry, to be occupied by her as a home for herself and the children; if she should remarry it is to be sold and the proceeds used for the support of the children at the rate of $50 per month; when the funds so realized are exhausted defendant shall resume the payment provided in their agreement for the support of the children, plaintiff to have the right to the exclusive use of the home as long as she does not remarry; that the agreement contains no provision for any change in the ownership or title of the property in the event plaintiff should remarry, except that in such event the home shall be sold; that plaintiff has not remarried and at the time of filing her complaint she was occupying the home for herself and the minor children.

No mention of the complaint in intervention appears in the findings but the court concluded and adjudged that the home is held in trust pursuant to the provisions of the property settlement agreement between the parties in favor of the minor children of the parties, "intervenors herein."

Viewed from any angle, the agreement of the parties is sufficient to support the judgment. In the absence of the agreement the right of appellant to a partition of the property could not be questioned. (Code Civ. Proc., § 752.) ▇ But a joint tenancy just as a tenancy in common may be altered by a written agreement of the tenants who may by contract modify the right of partition. (*Asels* v. *Asels,* 43 Cal.App. 574, 578 [185 P. 419].) ▇ The language of the agreement distinctly provides that the property "shall remain in the name of the parties hereto as joint tenants, so long as the first party does not remarry and so long as said property is kept by first party as a home for herself and the children

of the parties hereto.'' The meaning of the word ''remain'' is ''to continue unchanged in place, form or condition; to continue.'' (Webster's International and Oxford English Dictionaries.) Hence, the provision for the property to remain in the names of the parties as joint tenants has no other reasonable meaning than that the title of the home should remain in the names of both parties until one of two conditions should occur, to wit; appellant's remarriage or her removal from the home. If she ceases to occupy the home the title in joint tenancy nevertheless continues until she remarries, but if she remarries a sale must be made. As further proof that the property is to be kept in trust the agreement provides that upon a sale thereof the funds realized shall be used for the support and maintenance of the minor children, and that when said funds are exhausted respondent ''shall resume the payments hereinafter provided for the support of said minor children.'' No ambiguity or uncertainty in the language of the agreement appears. ■ The writing was prepared by appellant and her own attorney; hence it must be interpreted most strongly against her. (Civ. Code, § 1654.)

■ Since no equitable ground for annulling the contract is alleged the question of whether it is a complete expression of the agreement of the parties is one of law. (*Harrison* v. *McCormick*, 89 Cal. 327, 331 [26 P. 830, 23 Am.St.Rep. 469].)

■ Appellant still occupies the home with her children and has not remarried. Considering such facts in connection with the language of the agreement it is clear that it was the intention of the parties that their home should serve as the primary factor in a trust fund for the benefit of their children. Such conclusion is accentuated by two provisions: (1) the proceeds from its sale shall be exhausted in maintaining the children in the event that they should cease to be sheltered thereby; (2) in the event of a reconciliation the agreement is to remain in full force unless modified by a writing.

■ The purpose to be achieved by a contract is the principal factor in deriving its meaning. (*In re City and County of San Francisco*, 191 Cal. 172, 177 [215 P. 549].) ■ It must be construed according to its plain common sense meaning as gathered from its four corners. (*Cook* v. *Columbian Oil Asphalt & Refining Co.*, 144 Cal. 670, 674 [78 P. 287]; *Pacific Heating & Ventilating Co.* v. *Williamsburg City Fire Ins. Co.*, 158 Cal. 367, 369 [111 P. 4].) ■ Such

construction must be given to a contract as will effectuate the mutual intention of the parties as of the date of the writing, and such intention is to be ascertained solely from the language employed where it is clear and explicit and involves no absurdity. (Civ. Code, § 1636; *Betts* v. *Orton*, 34 Cal. App. 397, 400 [167 P. 1147].)

Appellant contends that the judgment is not supported by the evidence in that respondent breached the property settlement agreement in the following particulars, to wit: (1) he refused to permit appellant the exclusive and peaceful occupation of the home; (2) he was constantly in arrears in the payments of the nominal support for the children; (3) he constantly molested appellant and the children and retained possession of a part of the premises. Such breaches were alleged by appellant in her answer to the cross-complaint. Notwithstanding their denial no proof was offered in support thereof. Having brought her action for partition she thereby impliedly acknowledged the validity of the property settlement and the nonexistence of grounds for annulling it.

██ Appellant contends that if the agreement intended a restraint on her right to sell the property at any time prior to her remarriage such restraint would be void as in violation of section 715, Civil Code.* But a glance at the language of the agreement discloses that the restraint placed upon the parties is not to exist beyond the lives of any persons named in the agreement; in fact, not beyond the minority of the two children. ██ In contending that the property settlement did not effect a trust appellant argues that "no statement nor words are contained in the agreement to indicate an intention to create a trust." In making such contention appellant is forgetful of the essentials of a valid trust, to wit, a competent trustor, a property, an indicated intention, a definite disposition of the estate, a trustee and a beneficiary. (54 Am.Jur., p. 43, § 30; 65 C.J., p. 231 et seq.; *Lefrooth* v. *Prentice*, 202 Cal. 215, 226 [259 P. 947].) In addition to the terms of the traditional valid trust the Legislature in 1929

---

*Except in the single case mentioned in section 772, the absolute power of alienation cannot be suspended, by any limitation or condition whatever, for a longer period than as follows:

1. During the continuance of the lives of persons in being at the creation of the limitation or condition; or

2. For a period not to exceed 25 years from the time of the creation of the suspension.

provided that a trust in relation to real or personal property or both may be made for any lawful purpose. (Civ. Code, § 2220.) ██ The language of the agreement in the instant case provides (1) a legal purpose, to wit, maintaining the home for appellant and the minor children; (2) an estate, to wit, the home held by the parties as joint tenants; (3) beneficiaries, to wit, appellant and the minor children; (4) a legal term, to wit, the time during which the children would be entitled to support and maintenance from their parents. With all the elements of a legal trust present, the finding that a valid trust was created by the property settlement was supported by the contract of the parties.

Appellant contends that the findings indicate that no trust was created and could not be created at any time prior to appellant's remarriage. Also, she contends that the findings do not show that appellant waived a right to partition. Such contentions fly in the face of the very contract to which she subscribed as well as of the findings. ██ The agreement that the home was to remain in the names of the parties as long as the wife does not remarry and so long as the property is occupied by her as a home for herself and the children constitutes a restriction upon the rights of the parties to partition the property so long as these conditions exist, and constitutes a waiver of the right of either party to a partition during the prescribed period. The findings also provide in conformance with the agreement that in the event appellant should remarry the home is to be sold and the proceeds used for the benefit of the children. Could language more clearly indicate a provision for a trust in favor of the children? While the property is left in the names of the parties as joint tenants until the happening of the contingencies specified, yet the rights of the children are hedged about with restrictions against the alienation of the property by any device whatsoever prior to their attaining majority.

██ Appellant contends that the interlocutory and final judgments of divorce are superior to the property settlement and therefore control the decision in the instant case, citing *Abbott* v. *Superior Court,* 69 Cal.App. 660, 666 [232 P. 154]. That decision holds that an interlocutory decree dealing with the property rights of the parties, but which does not adopt a contract theretofore made by them, becomes nevertheless conclusive as to property rights. But the cited decision is of no avail where the trial court has already made findings based

upon substantial evidence, definitely holding that the contract of the parties, as in this case, was to the effect that the title to the home of the parties should be held in *statu quo ante* the divorce decree. Like Hamlet's play, the agreement settling their property rights is the thing. When spouses honestly agree to a disposition of their joint or community property such disposition is final without regard to whether it is approved by the court in divorce proceedings. Such approval is not essential to its efficacy. (*Green* v. *Green,* 66 Cal.App.2d 50 [151 P.2d 679] ; *Adams* v. *Adams,* 29 Cal.2d 621, 624 [177 P.2d 265].)

██ The contention that the agreement is void because it was made in contemplation of an action for divorce cannot be sustained. The instrument itself provides that appellant had already instituted her action for divorce and that the parties were living separate at the time. Under such circumstances a discussion of the impending divorce was rendered imperative by reason of the necessity of providing for their children through the years of their infancy. Agreements of spouses providing for the performance of certain acts in the event of a divorce do not contravene public policy. Where parties are living separate and apart and their agreement shows that they intended thereby amicably to settle and adjust all differences as to property rights it is not contrary to public policy to do so. (*Hill* v. *Hill,* 23 Cal.2d 82, 89 [142 P.2d 417].)

██ Prejudicial error is assigned with reference to the court's rejecting the testimony of the witness Wenzell called on behalf of appellant for the purpose "of clarifying the agreement and to discover the intention of the parties." The ruling of the court was correct. The circumstances under which the contract was made are contained in the writing itself. By reason thereof, no parol proof was necessary to make the contract intelligible. No doubt arises from the language of the agreement that needs to be dispelled by oral testimony. The language is plain and unambiguous and is sufficient support for the court's finding. When a contract is in writing the instrument itself shall be considered as containing all the terms of the agreement, and no evidence other than the contents of the writing is admissible except (1) where there is a mistake or imperfection in the writing itself or (2) where the validity of the agreement is the fact in dispute.

(Code Civ. Proc., § 1856; *Harding* v. *Robinson,* 175 Cal. 534 [166 P. 808].)

Judgment affirmed.

McComb, J., and Wilson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 25, 1947.