[Civ. No. 28150.   Second Dist., Div. One.   Mar. 10, 1965.]

JAMES A. PINE, Plaintiff and Respondent, v. MYRON W. TIEDT et al., Defendants and Appellants.

734

Brown & Grisham and Konstantine P. George for Defendants and Appellants.

Denio, Hart, Taubman & Simpson and Roger W. Young for Plaintiff and Respondent.

LILLIE, J.—Defendants appeal from an interlocutory decree in partition. Inasmuch as appellants do not challenge the sufficiency of the evidence to support the findings, we summarize only those facts relative to the legal issue involved. The evidence is viewed in a light most favorable to respondent. (*Grainger* v. *Antoyan,* 48 Cal.2d 805 [313 P.2d 848].)

In 1952 A. A. Guilliaum (not a party herein), owner and operator of Los Alamitos Sanitarium, invited friends and relatives to participate in the acquisition of certain real property under option to him upon which he intended to build another convalescent home and sanitarium. At the same time he contacted plaintiff Pine, a general contractor, to construct the buildings; defendant Virginia Tiedt was then employed as Pine's bookkeeper. In the course of planning and promotion to raise additional funds, Guilliaum invited Virginia and her husband (defendants herein) to become investors. They were interested because of Guilliaum's extensive experience in the operation of sanitariums, and deposited funds for which they subsequently received an undivided 4/100 interest in the land; in 1958 they acquired another 4/100 interest. Today they own an undivided 8/100 interest in the land sought to be partitioned.

In early 1953, Guilliaum invited his friends, relatives, plaintiff Pine and defendants to attend a meeting at which he discussed the project. Guilliaum outlined the proposal pursuant to which the investors would own the real property and lease the same for 50 years to an operating corporation (to be formed by him under the name of Lincoln Park Retreat, Inc.). He told them that those who invested money in this enterprise would have an income from this lease for 50 years. Plaintiff Pine, present in the sole capacity of building contractor, discussed only the status of the building plans and specifications and the construction aspects of the proposed building. However, very soon thereafter Pine too became an investor; his investment consisted of credit for his profits under the construction contract for which he was to receive a 25 per cent fractional interest in the land. As to the construction of improvements, plaintiff Pine contributed an additional $100,000.

Upon acquisition of the land, by reason of Pine's substantial investment, title was taken in his name and that of Mrs. Burson (agent of Guilliaum). An escrow was established in which a 50-year lease was executed by plaintiff Pine and Mrs. Burson, as lessors, and Lincoln Park Retreat, Inc., the operating corporation organized by Guilliaum, as lessee. Then Pine and Burson, by a single grant deed, conveyed undivided fractional interests in the land amounting to 56/100 to those investors (including defendants) named in the deed. Mrs. Burson retained an undivided 19/100 interest in the land and plaintiff Pine a 25/100 interest. By this conveyance all parties became tenants in common. However, the deed from Pine and Burson to the investors contained the following: "IT IS AGREED, by and between Grantors and Grantees that by the acceptance of the within Deed, Grantees for themselves, their personal representatives, successors and assigns waive any and all rights otherwise conferred by law to partition all or any part of the real property granted hereby." Pine and Burson put this provision in the deed upon advice of counsel that the small investors should be deprived of the right of partition in order to protect their (Pine and Burson) investment from those holding only nominal interest. While defendants here claim that they were unaware that their interest was so restricted, the record does not support them. At the outset, Virginia knew of the waiver of the right of partition in the deed. The escrow clerk testified that defendants were provided with a certified copy of the deed and a copy of the title report at the close of the transaction in 1953—both contained reference to the waiver. According to her own testimony she knew as early as 1955 that Pine had the right of partition and she did not, and complained to him about the fact that he had retained the right; and knowing of the restriction, defendants acquired an additional 4/100 interest in the land in 1958.

The land was sold to the investors at its cost plus site improvements; thereafter additional amounts were paid by them on the construction contract for the improvements. In the beginning the land ownership and stock ownership in the operating corporation were proportionate; subsequent to the execution of the deed, the tenants in common by proportionate payments caused improvements to be constructed on the land; thereafter conveyances of land occurred independent of stock transfers and vice versa. During the final stages of construction, plaintiff Pine became an officer and employee of

Lincoln Park Retreat, Inc., the operating corporation; when the sanitarium opened for business he gave up his contracting business and since has devoted his entire time to the operation of the sanitarium. In 1959, at the urging of plaintiff Pine, who at that time owned 70 per cent of the stock of Lincoln Park Retreat, Inc., the 50-year lease was revised reducing both the rent and the term, and appending thereto options for successive renewals of five years each for a total of 15 years. Following this, plaintiff Pine entered into an amendment of the lease by which the rent was further reduced. Additional facilities were constructed on the land and a second corporation, Mission Retreat, Inc., was created to operate it. The stock of Mission Retreat, Inc., is owned by Lincoln Park Retreat, Inc. A third corporation, Pacific Sanitarium Services, Inc., was created which contracted with Lincoln Park Retreat, Inc., and Mission Retreat, Inc., to furnish food, laundry and maintenance to them; the sole stock holder of Pacific Sanitarium Services, Inc., is plaintiff Pine.

Just prior to trial Pine caused a limited partnership, Lincoln Park Associates, Ltd., to be formed in which he is the sole general partner; Lincoln Park Retreat, Inc., became the sole limited partner. All interest of the remaining land owners, including that of Pine, were transferred to Lincoln Park Associates, Inc. At the time of trial, after various conveyances and transfers, Pine and defendants were the sole stockholders in Lincoln Park Retreat, Inc., of which Pine is president. It now owns 92/100 interest in the land, defendants own an undivided 8/100 interest therein. In Lincoln Park Retreat, Inc., plaintiff Pine owns all of the stock with the exception of 45 shares owned by defendants. Plaintiff Pine, the sole general partner of Lincoln Park Associates, Ltd., brought this action against defendants for partition of the land. The trial court found all substantial allegations of the separate defenses to be untrue and concluded that plaintiff Pine is not estopped to maintain the action.

Appellants do not deny that they expressly waived their right of partition, and they do not argue that plaintiff Pine *expressly* waived his right in the deed. They do claim, that knowing the nature of the venture and its purpose—to provide a continuous income to the investors under a long term lease with a corporation organized to operate a sanitarium on land they would acquire—Pine impliedly agreed to waive the right of partition when he executed the lease with Lincoln Park Retreat, Inc., and conveyed to the investors the un-

divided fractional interests in the land. There is merit to this contention under the rule that an agreement to postpone partition may be implied where the purpose for which the property was acquired by the parties would be defeated by partition. (*Thomas* v. *Witte,* 214 Cal.App.2d 322 [29 Cal. Rptr. 412].)

The plan or scheme under which the parties invested their money, which reflects the purpose for which the land was acquired by them, is clearly detailed in the evidence. At the very outset, in early 1953, Guilliaum outlined to all of the investors and to plaintiff Pine the proposal pursuant to which they would own the land they intended to buy and lease the same for 50 years; and told them that those who invested money in this enterprise would have an income for 50 years. While Pine was present, he was at the meeting only in the capacity of a contractor, and said nothing concerning the nature or purpose of the proposal; and there is no evidence of any relation between Pine and Guilliaum from which it could be inferred that Pine should be bound by Guilliaum's statements. Nevertheless, Pine was present, he was also to construct the buildings constituting the sanitarium, and he knew full well the nature and purpose of the entire venture; in fact, he knew and thought so much of it that shortly thereafter he, too, invested considerable money in the project.

The creation of this contenancy was not effected in the conventional manner. The parties were not merely invited to become cotenants in a piece of property to be purchased by them; they were invited to become investors in an enterprise. The operation of the sanitarium was part and parcel of that enterprise and was the subject of the lease on the land. It created the use to be made of the land. It was for this purpose and the income to be derived from the lease, they invested their money. When they became investors they joined in an enterprise or a venture by which they acquired interest in the land and stock in the corporation which was to operate a sanitarium on the premises. Then the stock was equivalent in percentage amounts to their interest in the land. The acquisition of stock in Lincoln Park Retreat, Inc., the operating corporation, is evidence that the parties were not dealing solely with a piece of land. Their investment in the operating corporation was not then separate and apart from the land ownership. They embarked on a common course with one purpose, to provide themselves with a continuous income.

At the time the investors went into the venture and received

their undivided fractional interests in the land by deed from Pine and Burson creating the cotenancy, Pine had already committed the land to a specific use (a sanitarium) for a definite period of time by executing a lease in accordance with the plan submitted to the investors. Under the lease they undertook to construct upon the land buildings according to certain plans and specifications; the lease also provided for a 50-year term at specified rentals, and required that the lessee pay all maintenance of the premises in their entirety and all expenses in connection with the upkeep of the property, except taxes. The building was constructed on the land by plaintiff Pine; it was a single purpose building for a convalescent home and sanitarium. That an exercise of the right of partition would frustrate and thwart the operation of the enterprise and the whole purpose for which the investors entered into the venture, was well recognized by plaintiff himself when, on advice of counsel, he and Burson included in the grant deed to the investors a provision by which they (grantees) waived their right of partition. Admittedly they did this to protect their investment in the venture from those holding only nominal interests.

While it has been said that a cotenant is entitled to partition as a matter of absolute right (*De Roulet* v. *Mitchel,* 70 Cal.App.2d 120, 123 [160 P.2d 574]), the courts have held that right to be subject to waiver which may be effected by an implied as well as an express agreement when an inequity would result. (*Thomas* v. *Witte,* 214 Cal.App.2d 322 [29 Cal. Rpt. 412].) In *Asels* v. *Asels,* 43 Cal.App. 574 [185 P. 419], citing Freeman on Cotenancy and Partition (2d ed., § 442), the court said at pages 578-579 : " 'But we think the decided preponderance of authority supports the proposition, that the general principle of law that the right to partition is absolute must be confined "in its application to ordinary joint tenancies or tenancies in common, where the right to partition is left to result as an ordinary legal incident of such tenancy, and that it was never intended to interfere with contracts between the tenants modifying or limiting this otherwise incidental right, nor to render it incompetent for parties to make such contracts, either at the time of the creation of the tenancy or afterwards." ' " This rule has been often applied where property by agreement of the cotenants was set aside for occupancy of one of them during the existence of certain conditions, for a period of time or for his life. The courts have held that under such circumstances there is an implied agree-

ment on the part of the other party waiving the right of partition. (*Miranda* v. *Miranda,* 81 Cal.App.2d 61 [183 P.2d 61]; *Nazzisi* v. *Nazzisi,* 203 Cal.App.2d 121 [21 Cal.Rptr. 396].) While these cases deal with property which by property settlement agreement has been given to one of the spouses for occupancy under certain conditions, the rule applied is that partition cannot be had without the consent of all parties where it would conflict with a prior agreement of the parties as to the use of the property.

We have found no cases similar on their facts to the one at bar, but *Thomas* v. *Witte,* 214 Cal.App.2d 322 [29 Cal. Rptr. 412], presents a parallel situation. Therein the court relied upon the rule that an agreement which will operate to limit or modify the right of partition of property held in coownership may be implied " 'where the purpose for which the property was acquired would be defeated by partition' " (p. 327), citing 40 American Jurisprudence, Partition, section 7, page 7. Numerous owners of oil and gas leases had committed their oil properties to unitized operation under a single operating agreement which designated one of the cotenants as the operator. One of the owners sought partition. Basing its decision in part on implied waiver, the court held that by executing the operating agreement the cotenants necessarily impliedly waived their right of partition, for partition would have destroyed the purpose for which the agreement had been entered into. "We must conclude that there was an implied waiver of the right of partition on the part of the plaintiffs while the operating agreements are effective and that partition was therefore improperly granted by the trial court. (P. 331.) Although unitized oil properties were involved in *Thomas* v. *Witte, supra,* nevertheless the court relied upon the theory that there was an implied waiver from the fact that the parties had committed the property to a specific use for a certain period of time. In principle the same is true here.

Viewing the situation as it existed at the time the investors put their money in the venture, and considering the nature of the venture, the purpose of acquiring the land, and the lease entered into by Pine on behalf of the investors committing the land for a specific purpose, we conclude as a matter of law that there exists on the part of Pine an implied waiver of any right of partition, at least until the term of existing leases which Pine himself later revised and modified,

come to an end. To permit partition would frustrate the very purpose for which the land was acquired by the investors and for which it is now being used.

For the foregoing reasons the judgment is reversed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied April 2, 1965, and respondent's petition for a hearing by the Supreme Court was denied May 5, 1965.