Filed 10/1/20  Murray v. Hull CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| APRIL A. MURRAY, | B290468 |
| Successor in Interest, etc., Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC660453) |
| v. | |
| JAMES E. HULL et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michelle Williams, Judge.  Affirmed.

April A. Murray in pro. per., as Successor in Interest, etc.; Justin R. Sarno for Plaintiff and Appellant.  [Retained.]

No appearance for Defendants and Respondents.

* * * * * *

A woman sued her siblings to partition the "family home" that they jointly owned. She also sued for waste. The trial court rejected her claims after a one-day bench trial. We conclude there was no error, and affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts[1]

#### A. *The family*

As pertinent to this case, the family consists of several individuals—Billie J. Hull (plaintiff); her mother, Annie Hull; and various other family members, including Patricia Duplantier, Joyce Ann Hull, Annie Davis, and Helen Parson, James Earl Hull, Augustus Hull, William Hull and Vernon Hull.

#### B. *The "family house"*

The lawsuit deals with a residential property on South Ward Avenue in Compton, California (the property).

The property was purchased in 1970 to serve as the "family house." Title to the property was taken by plaintiff and Annie Hull, as joint tenants. Annie Hull, the family matriarch, lived in the house on the property.

In 2000, plaintiff and Annie Hull quitclaimed title to the property to all of the family members as joint tenants. The deed granted title to the married family members as their "sole and separate property." In changing the title, "the intent of the [family members] was that the house was 'for the family'" and to ensure that the family "would have a place to go."

Over the next 16 years, the family members did some upkeep on the property. In 2005, the family members took out a

---

[1] These facts are drawn from the Separate Statement prepared by the trial court, by the exhibits admitted at trial, and by the facts deemed admitted due to a discovery violation.

$100,000 loan, secured by the property, to rebuild the house "around mother." And in 2009 or 2010, Augustus Hull painted the house and did some other maintenance. While there was evidence that in 2016 the property was in "bad condition" and had several permit violations, there was no evidence of the property's prior value.

During this 16-year period, plaintiff was the only sibling who paid the monthly mortgage, the property taxes, the insurance premiums on the property, or for any upkeep, maintenance and repairs. Two of the siblings—Joyce Ann Hull and William Hull—lived on the property by 2016, but did not pay plaintiff any rent. They occasionally sublet part of the property as well.

## II.    Procedural Background

In August 2016, plaintiff sued all of her family members except Helen Parson, Annie Hull and Vernon Hull (as those three had passed away). In this lawsuit, plaintiff sought (1) to partition the property by selling it, and (2) compensatory damages for waste on the ground that her siblings had "caus[ed] a diminution of value by failing and refusing to maintain its upkeep."[2] Plaintiff attached documents to the complaint indicating that two of the family members—Patricia Duplantier and Annie Davis—consented to the partition by sale.

---

[2]    Four of the siblings—James Earl Hull, Augustus Hull, Joyce Ann Hull and William Hull—filed a cross-complaint against plaintiff for fraud, embezzlement, breach of trust and an accounting. From the fractured record we have been provided, we cannot ascertain what happened to the cross-complaint. But it is of no matter because it is not at issue on appeal.

The trial court held a one-day bench trial in January 2018. Plaintiff, Patricia Duplantier, James Earl Hull, Joyce Ann Hull, and Augustus Hull each testified.

In April 2018, the trial court issued its 11-page Final Statement of Decision. The court denied plaintiff's request for partition. The court recognized that joint tenants have a right to partition their jointly owned property, but noted that they may waive that right by entering into an express or implied agreement not to partition. The court observed that courts may imply such an agreement "'where the purpose for which the property was acquired would be defeated by a partition.'" Based on the evidence adduced at trial, the court found "an implied, if not express, agreement among the family members that the property would stay in the family for use by the family" and that "[p]artition by sale would breach this agreement." The court acknowledged that plaintiff and Patricia Duplantier had, in their testimony, disputed that the intent of the siblings was to create a "family home," but the court found the "Hull defendants' testimony concerning the purpose of the transfer and loan . . . to be substantially more credible than [p]laintiff or . . . Duplantier." The court also denied plaintiff's claim for waste because she had adduced "almost no evidence to support her claim that . . . Augustus [Hull] and Joyce [Ann Hull] have caused waste in excess of any depreciation in the value of the property through the exercise of their legal rights."

Plaintiff filed this timely appeal. While the appeal was pending, she passed away and we substituted April Murray, her successor in interest, as the appellant (plaintiff). For ease of reference, we will continue to use the term "plaintiff."

4

**DISCUSSION**

Plaintiff argues that the trial court erred in rejecting her claims for partition and waste. We review the trial court's legal rulings de novo and its factual findings for substantial evidence. (*Siry Investments, L.P. v. Farkhondehpour* (2015) 238 Cal.App.4th 725, 728-729.)

**I.    Claim for Partition**

When a parcel of property is owned by joint tenants, each has the right to sever the joint tenancy by seeking judicial partition of the property. (Code Civ. Proc., § 872.710, subd. (b)[3] [creating qualified *statutory* right to partition]; *Estate of Propst* (1990) 50 Cal.3d 448, 455 [noting "common law" right to partition].) However, a joint tenant's right to partition is "not absolute" (*De Harlan v. Harlan* (1946) 74 Cal.App.2d 555, 560), and may be waived by a prior express or implied agreement by the joint tenants *not* to partition. (§ 872.710, subd. (b); *Orien v. Lutz* (2017) 16 Cal.App.5th 957, 962; *Pine v. Tiedt* (1965) 232 Cal.App.2d 733, 738 (*Pine*); *Heber v. Yaeger* (1967) 251 Cal.App.2d 258, 262.) Courts will imply such an agreement if "the purpose for which the property was acquired would be defeated by" partition (*Thomas v. Witte* (1963) 214 Cal.App.2d 322, 327; *Pine*, at p. 739) or if "partition would frustrate the very purpose for which the land . . . is now being used" (*Pine*, at p. 740).

The trial court applied this governing law and its finding that the family members had entered into an express or implied agreement not to partition the property is supported by substantial evidence. At trial, Augustus Hull testified that "the

---

[3]    All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

5

intent of the [family]" in putting title to the property in all of the siblings' names in 2000 "was that the house was 'for the family'" and to ensure that the family members "would have a place to go." The mutual intent to keep the property "in the family" was corroborated by the specification that title was to be taken by any married family members "as their sole and separate property." It is also corroborated by the parties' conduct. The family members took title as *joint tenants* rather than tenants in common, ostensibly because joint tenancy assures that, as each family member dies, his or her interest passes to the other living family members holding title—not to anyone else. (E.g., *Zanelli v. McGrath* (2008) 166 Cal.App.4th 615, 630 ["The right of survivorship is the distinguishing feature of a joint tenancy."]; *Estate of Mitchell* (1999) 76 Cal.App.4th 1378, 1385 (*Mitchell*) ["'when one joint tenant dies, [his or her interest] belongs automatically to the surviving joint tenant(s)'"].) Consistent with this purpose, Joyce Ann and William were living on the property at the time plaintiff filed her lawsuit. Partitioning and selling the property would defeat both the purpose for which the property was acquired as a joint tenancy among all the family members and the purpose for which it was being used in 2016 because partition and sale would mean that the property would no longer function as a "family" house and would leave Joyce Ann and William without a "place to go"; indeed, Joyce Ann said she would be rendered homeless if the property were sold. (Accord, *Pine, supra,* 232 Cal.App.2d at p. 739 [agreement not to partition implied where property was "given to one of the spouses for occupancy" and partition would result in her eviction].)

Plaintiff attacks the trial court's partition ruling with what boil down to five arguments.

6

First, she urges us to review the evidence de novo. For support, she cites *Bixby v. Pierno* (1971) 4 Cal.3d 130, 141-147, *Interstate Brands v. Unemployed Ins. Appeals Bd.* (1980) 26 Cal.3d 770, 774-780, and other cases. All of these cases deal with the standard of review applicable to writs of administrative mandamus under section 1094.5; they are accordingly irrelevant. Where, as here, we are reviewing a trial court's factual findings regarding partition—and, even more specifically, its findings regarding the existence of an agreement *not* to partition—we review those findings solely for substantial evidence. (*Cunningham v. Frymire* (1958) 160 Cal.App.2d 726, 729 [so holding]; *Miranda v. Miranda* (1947) 81 Cal.App.2d 61, 68-69 [same].)

Second, plaintiff argues that substantial evidence does not support the court's finding of an agreement not to partition the property because (1) plaintiff testified that there was no such agreement and, as a matter of logic, she would never have entered into an agreement that left her paying all of the expenses while her other family members paid nothing, and (2) the court's finding contradicts the facts that the court previously deemed to be established due to her family members' refusal to respond to one of her discovery requests. We reject both arguments. Although plaintiff testified that there was no such agreement, Augustus Hull testified that there was, the trial court found him more credible on this point, and his testimony alone constitutes substantial evidence. (E.g. *People v. Lewis* (2001) 25 Cal.4th 610, 646 ["The testimony of a single witness . . . can constitute substantial evidence."]; *In re Lana S.* (2012) 207 Cal.App.4th 94, 103 [appellate courts cannot generally revisit a trial court's credibility findings].) Further, plaintiff's argument that she

7

would never have agreed to forego partition had she known her other family members would contribute nothing in the future impermissibly asks us to infer her intent at one point in time from what happened afterwards; we decline to construe the parties' intent through the distorting lens of hindsight. And although the trial court did deem several facts to be conclusively admitted as a sanction for a discovery violation (§ 2033.280; *St. Mary v. Superior Court* (2014) 223 Cal.App.4th 762, 783), we disagree with plaintiff that those facts were "outcome determinative" in her favor. To the contrary, the facts deemed to be conclusively admitted were that plaintiff was the only sibling who paid the monthly mortgage, paid the property taxes, paid the insurance premiums, and paid for the upkeep, maintenance and repairs on the property. These facts do not speak to the parties' intent in transferring the property in 2000 or to its current use, and thus are not relevant to the factual findings on which the trial court's decision ultimately turns. Plaintiff urges that the trial court should have mentioned the conclusively established facts in its order, but its failure to do so does not change their lack of relevance.

Third, plaintiff contends that partition is a favored remedy—both generally, because it fosters the alienability of property (e.g., *Summers v. Superior Court* (2018) 24 Cal.App.5th 138, 142; *Cummings v. Dessel* (2017) 13 Cal.App.5th 589, 596-597; Civ. Code § 880.020, subd. (a)(1) ["[R]eal property . . . should be made freely alienable and marketable to the extent practicable"]), and specifically here, because it would allow the cost of the property's permit violations to be spread out among all the siblings. Neither contention overrides the trial court's factual finding that there was an agreement not to partition. (Accord,

8

Civ. Code § 880.030 ["Nothing in this title shall be construed to . . . [l]imit [the] application of the principles of *waiver . . .*"], italics added.)

Fourth, plaintiff cites a number of cases that she claims support reversal of the trial court's ruling or otherwise impeach the trial court's analysis. They do not. (See *De Roulet v. Mitchel* (1945) 70 Cal.App.2d 120, 123-124 [addressing issue of partition in kind versus partition by sale]; *Formosa Corp. v. Rogers* (1951) 108 Cal.App.2d 397, 409 [same]; *Friedman v. Friedman* (1993) 20 Cal.App.4th 876, 883-884 [addressing so-called "*Marvin* contracts" between non-married spouses].)

Lastly, plaintiff accuses the trial court of allowing its ruling to be "dictated by the subjective consequences of ordering a partition," and as evidence of the court's perceived bias, cites a passage from the statement of decision summarizing Joyce Ann Hull's testimony. That passage reads: "With great emotion, [Joyce Ann Hull] testified, 'I want to live in my mommy's house.'" We reject plaintiff's suggestion that a trial court's presumptively accurate summary of testimony, including its observation of witness demeanor, renders the court biased.

## II. Claim for Waste

One joint tenant may sue another for waste (§ 732), but such a claim requires a showing that the offending tenant's conduct has caused a "'substantial depreciation [in] the market value'" of the property at issue. (*Smith v. Cap Concrete, Inc.* (1982) 133 Cal.App.3d 769, 775-776; *Schellinger Brothers v. Cotter* (2016) 2 Cal.App.5th 984, 1001.) The trial court found that plaintiff had failed to show a substantial depreciation in the market value of the property, and that finding is supported by substantial evidence. There was evidence that the property was

9

in "bad condition" in 2016, but there was no evidence of its condition or value at other prior points in time; without that metric, there is no way to know whether the property's value had gone up or down due to the siblings' conduct. Further, our affirmance of the trial court's ruling on partition means that April Murray, as successor to Billie Hull, no longer has standing to seek redress for waste; only a property owner may bring a claim for waste (*Cornelison v. Kornbluth* (1975) 15 Cal.3d 590, 597-598; § 732), and Billie Hull's ownership interest in the property—by virtue of the joint tenancy and the absence of any partition of that joint tenancy—passed to the other family members upon her death, not to April Murray. (*Mitchell*, *supra*, 76 Cal.App.4th at p. 1385; cf. *Hammond v. McArthur* (1947) 30 Cal.2d 512, 515 [filing a partition claim does not terminate joint tenancy].)

Plaintiff offers two arguments in response. First, she argues that the trial court erred by looking to the *physical* condition of the property rather than its "*financial* condition," and by ignoring that the siblings did not contribute to the property's expenses. These arguments invite us to consider factors that do not have any bearing on whether the market value of the property has changed; as a result, they are irrelevant. Second, plaintiff asserts that her siblings' failure to remediate the permit violations itself constitutes waste. Although we agree that it *might* constitute waste if it substantially diminished the market value of the property, plaintiff has offered no evidence as to whether it did.

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT

We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

11