[Civ. No. 3071.   Third Appellate District.—April 30, 1926.]

# H. S. CRAIG, Appellant, v. NELLIE DINWIDDIE, Respondent.

[1] QUIETING TITLE—PRIORITY OF LIEN—ISSUES—EVIDENCE.—Where the complaint in an action to quiet title to real property alleges that the claim of the defendant is subordinate to the rights of plaintiff, and the answer denies such allegation and alleges that a certain mortgage owned by defendant (and which was recorded prior to the acquisition of the property by plaintiff) constitutes a prior lien upon the property, the trial court is correct in admitting proof of all the facts and circumstances tending to establish the priority of defendant's lien and particularly in admitting proof of the existence of a prior mortgage which had not been satisfied of record and the fact of its renewal by the mortgage pleaded by defendant.

[2] ID.—RECORDED MORTGAGES—CONSTRUCTIVE NOTICE—DUTY TO MAKE INQUIRY.—Where, at the time plaintiff took title to the property, both the original mortgage and the renewal mortgage were of record, and neither was shown as having been paid or satisfied, plaintiff must be held to have had constructive notice thereof; and, under section 19 of the Civil Code, plaintiff was put on notice to make inquiry to ascertain the facts concerning the two mortgages.

[3] ID.—RENEWAL NOTE AND MORTGAGE—CONTINUATION OF OBLIGATION—PRIORITY.—Where, before the statute of limitations had run as to the obligation secured by said original mortgage, a new note and mortgage were executed, not as an additional note and mortgage

---

2.   See 22 Cal. Jur. 616; 23 R. C. L. 194.
3.   See 18 Cal. Jur. 154.

but for the purpose of renewing the original note and mortgage, but said original note and mortgage were not satisfied of record, a continuation of the original obligation was effected, and the payment thereof was suspended until the maturity of the new note, but the mortgagee remained where she stood before the mortgage was renewed, as far as priority was concerned.

[4] ID.—FORM OF PROCEDURE—EQUITY.—Equity will look at the substance of such transaction and not merely the form characterizing the procedure; and where the form or procedure followed by the parties in executing said new note and mortgage differed somewhat from the usual method of renewing notes, but the substance was exactly the same, the mortgagee's rights were not impaired.

[5] ID.—FAILURE TO MAKE INQUIRY—EQUITABLE LIEN.—Where plaintiff, instead of making inquiries as to the two mortgages covering the land in question which were on record, chose the course of attempting to defeat an honest indebtedness and an equitable lien to secure the payment of the same by an alleged flaw in defendant's claim, he must be held to have taken the land subject to all hazards.

[6] ID.—RENEWAL NOTE—POSTPONEMENT OF RIGHT OF ACTION—EXTENSION OF MORTGAGE.—Where the statute of limitations has not run against the original indebtedness which is evidenced by a promissory note and secured by a recorded mortgage upon real property, the giving of a new note, by way of renewal, does not change the indebtedness, but merely postpones the time when action might be had to foreclose the mortgage given to secure its payment, and a renewal of the mortgage is not required.

(1) 32 **Cyc.**, p. 1367, n. 90.    (2) 39 **Cyc.**, p. 1785, n. 11.    (3) 37 **C. J.**, p. 1141, n. 41, 43; 41 **C. J.**, p. 582, n. 96.    (4) 21 **C. J.**, p. 204, n. 65, 68.    (5) 41 **C. J.**, p. 537, n. 5.    (6) 41 **C. J.**, p. 806, n. 93, p. 807, n. 98; 32 **Cyc.**, p. 1334, n. 13 New.

APPEAL from a judgment of the Superior Court of Madera County. Stanley Murray, Judge. Affirmed.

The facts are stated in the opinion of the court.

R. H. Chamberlain, Jr., for Appellant.

A. M. Pence for Respondent.

PLUMMER, J.—Action by plaintiff to quiet title to sixty and a fraction acres of land situate in Madera County. De-

6.  See 18 **Cal. Jur.** 155.

fendant pleaded a mortgage lien on the premises involved. Plaintiff had judgment subject to the mortgage and appeals from that part of the judgment establishing defendant's lien.

The complaint alleges that on the seventh day of February, 1924, plaintiff became and ever since has been the owner of the tract of land above referred to, and further that defendants (there being some fictitious persons named as defendants) claim to have some estate, right, title, or interest in, to, or against said property, or some portion thereof, but that such claims of defendants, and each of them, are without any right whatever and are subject and subordinate to the rights and claims of the plaintiff. The answer of the defendant, Nellie Dinwiddie, sets up a certain mortgage on the premises described in the complaint, said mortgage being dated September 22, 1920, for the sum of $6,565, payable three years after date, interest at seven per cent per annum, said mortgage being executed by Andrew McKibben and Nancy J. McKibben, alleged to be the owners of the premises referred to in plaintiff's complaint at the date of the execution of said mortgage, and that said mortgage constituted a first lien on said real estate, and that plaintiff's interest in said land is subsequent and subject to the lien of said mortgage. The answer also denies that the claim and interest of the said Nellie Dinwiddie is subordinate or subject to the plaintiff's claims.

The transcript shows that on or about the twenty-second day of September, 1916, E. I. Voorheis and Sarah E. Voorheis, his wife, then being the owners of the real estate referred to in plaintiff's complaint, executed a note and mortgage for the sum of $6,565, payable three years after date. This mortgage covered the lands and premises described in plaintiff's complaint. This mortgage was duly recorded and thereafter, and on or about the fifth day of December, 1917, assigned to Amanda E. Dinwiddie and Nellie Dinwiddie, and by them assigned to one Sherman Gail, and by the said Sherman Gail reassigned to Amanda E. Dinwiddie and Nellie Dinwiddie as joint tenants. After the execution of the mortgage just mentioned, known as the "Voorheis mortgage," the real estate referred to was sold and conveyed to Andrew McKibben and Nancy J.

McKibben, his wife, who, on or about the twenty-second day of September, 1920, executed to Nellie Dinwiddie a mortgage on the lands described in the first mortgage and the premises involved in this case, to secure a note in the sum of $6,565, payable three years after date, the "Voorheis mortgage" herein referred to being past due and unpaid. This mortgage, called the "McKibben mortgage," was not recorded until on or about the fifteenth day of November, 1922. In the meantime, and on or about the sixteenth day of March, 1921, Andrew McKibben, the mortgagor, conveyed the land in question to Margaret P. Van Hoosear. Thereafter, and after the recording of the McKibben mortgage, Margaret P. Van Hoosear and William S. Van Hoosear, by deed of gift, conveyed the property in question to their son, Burr S. Van Hoosear, who, on or about February 7, 1924, conveyed the land to the appellant, H. S. Craig. The Voorheis mortgage referred to herein was not satisfied of record until on or about the fifth day of March, 1924, a date subsequent to the time when the plaintiff and appellant took title to the property. The Voorheis mortgage was satisfied of record at the request of William S. Van Hoosear on behalf of appellant. After the satisfaction of the Voorheis mortgage had been entered of record, the plaintiff instituted this action to quiet title. The satisfaction of mortgage recites that "the Voorheis mortgage has been fully paid by renewal thereof," the renewal being by way of the mortgage executed by the McKibbens and set up in the answer of the defendant Dinwiddie.

Plaintiff's claim is based principally upon the provisions of section 1214 of the Civil Code, which reads: "Every conveyance of real property, other than a lease for a term not exceeding one year, is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded, and as against any judgment affecting the title, unless such conveyance shall have been duly recorded prior to the record of notice of action." Respondent's answer is based upon the principle set forth in section 19 of the Civil Code, which reads: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular

fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact." [1] Objection is also made by the appellant that the court admitted proof of the transactions recited showing the execution of the Voorheis mortgage, the fact of its renewal by the McKibbens' mortgage, and that the Voorheis mortgage was never otherwise paid on the ground that such questions were not tendered by the pleadings. The answer itself, however, alleges that the Mc-Kibben mortgage constituted a prior lien upon the premises, the lien which antedated the acquisition of the property by the plaintiff. The plaintiff's complaint alleged that the claim of the defendant Dinwiddie was subordinate to the rights of the plaintiff. This allegation was denied by the defendant. Under this state of the pleadings, we think the court was correct in admitting proof of all of the facts and circumstances tending to establish the priority of defendant's lien. [2] At the time the plaintiff took title, both the Voorheis and McKibben mortgages were of record and of which record the plaintiff must be held to have had constructive notice and under the record we think had actual notice. The record shows that the plaintiff acted as the attorney for the Van Hoosears in the transactions had by them in relation to the property. William S. Van Hoosear testified as to his knowledge of the circumstances of the Voorheis mortgage for $6,565 on the premises at the time he paid the same through the McKibbens. His testimony, by question and answer, is as follows: "Q. At the time you bought the property in question here from the McKibbens, there was a mortgage on it belonging to Miss Dinwiddie and her mother for $6,500.00 wasn't there. A. It shows $6565.00. Q. The same amount? A. That is what was told us; that is what we found of record, known as the Voorheis mortgage. Q. In other words, there was a mortgage indebtedness when you bought it, of $6565? A. Two of them, two mortgages. Q. But there was a mortgage which Miss Dinwiddie owned, of $6565.00 known as the Voorheis mortgage. Q. And during all the time that you owned this property and before you deeded it to your son, that mortgage was on the property? A. Yes, sir. Q. It was on the property when you deeded it to your son? A. Yes, sir. Q. And during all the time that you owned

the property and your son owned the property, you paid the interest on that mortgage? A. I sent the money; yes, sir. Q. And wrote letters to Miss Dinwiddie, requesting time to pay the interest? A. Sometimes, when my wife was sick; yes, sir. Q. You did that? A. Yes, sir; I admit that. Q. And at the time you deeded this property to your son, you have said that first mortgage was still on the property? A. The Voorheis and the other mortgage was still on the property. Q. Never was paid? A. No, sir. Q. As far as you know, never has been paid? A. No, sir." The deed from Margaret P. Van Hoosear and William S. Van Hoosear to Burr S. Van Hoosear bears date of the eighteenth day of November, 1922; notwithstanding this deed of gift, William S. Van Hoosear testified that he continued to pay interest on what he called the Voorheis mortgage to the defendant Dinwiddie until to and including September, 1923. Upon cross-examination, the witness, William S. Van Hoosear, testified that he first had knowledge of what is called the McKibben mortgage in October, 1923, and that when he suggested the release of the Voorheis mortgage of record, he was referring to what he called the outlawed mortgage and that the Voorheis mortgage, by its terms, became outlawed in September, 1923. Without setting forth the entire evidence from which we think the court was justified in concluding that all parties concerned were well aware of all the proceedings, we content ourselves with quoting from the opinion of the trial court, which clearly indicates the character of the whole transaction. "The court has well in mind the testimony; I want to say frankly, this is a most unusual set of circumstances, without commenting on my ideas of the evidence, I am satisfied that the existence of this mortgage is well within the knowledge of all the parties; therefore, it is the judgment and decree that title be vested in H. S. Craig as prayed, subject to the lien and encumbrance of the mortgage of Miss Dinwiddie."

Any inquiry on the part of the plaintiff would have elicited the information that the Dinwiddie mortgage was given simply as a renewal of the Voorheis mortgage. It was not given in payment and no release or satisfaction of the Voorheis mortgage was ever entered other than that solicited by the plaintiff and the Van Hoosears, which was obtained in the language we have quoted, which was followed im-

mediately by this action to quiet title. Any reasonable or prudent man would have made inquiry to ascertain the facts concerning the two mortgages and, under such circumstances, we think section 19 of the Civil Code has direct application.

[3] The debt in this case was at all times kept alive. There is no pretense that the McKibben note and mortgage was given as an additional note and mortgage or other than as claimed by the respondent. The form or procedure followed perhaps differs somewhat from the usual method of renewing notes, but the substance was exactly the same, and by the execution of the new note and mortgage payment of the old note was suspended until the maturity of the new note, and thus leaving the respondent standing precisely where she stood before the mortgage was renewed, as far as priority is concerned. (*Tolman* v. *Smith*, 85 Cal. 288 [24 Pac. 743].) [4] Equity will look at the substance of the transaction and not merely the form characterizing the procedure. (*Tolman* v. *Smith, supra; Swift* v. *Kramer*, 13 Cal. 526 [73 Am. Dec. 603].) While the debt remains the lien is not extinguished. (*Worth* v. *Worth*, 155 Cal. 599 [102 Pac. 663].) This is not a case of a new promise, but simply a continuation of the old obligation, as pointed out in *Weinberger* v. *Weidman*, 134 Cal. 599 [66 Pac. 869], where the distinction is drawn between one made before and one made after the statute has run. "The one keeps alive the first obligation, and if suit is brought, it must be upon the original promise, and so long as the debt is kept alive, the lien of the mortgage continues." In *Newhall* v. *Hatch*, 134 Cal. 269 [55 L. R. A. 673, 66 Pac. 266], the court, in considering the effect of the renewal of a note secured by mortgage, thus states its views: "At the time the note was renewed, Hatch was the owner of the land, and the plaintiff was the owner of the debt. They were the only parties interested in the transaction, or that would be affected thereby, and the effect of this renewal of the obligation could not be impaired by any subsequent acts of others. The renewal had the same effect with reference to persons thereafter dealing with the land as if Hatch had then executed a mortgage for that amount." The court then holds that the renewal of a note works a continuation of the mortgage lien. In *Lent* v. *Morrill*, 25 Cal. 492, the court holds

that if the maker of a note secures the same by a mortgage on lands, and while still the owner of the mortgaged property extends the time of payment of the note, a purchaser from the mortgagor of the premises mortgaged takes the same subject to the lien of the mortgage until the note is barred by the statute of limitations, although at the time of his purchase he did not know that the time of payment of the note had been extended. The language of the court is as follows: "It is a matter of no moment that Chambers, when he took his conveyance of the land in 1862, had no knowledge that the note and mortgage had been extended. Lent was not delinquent in any known common law or statute duty or requirement. He was not bound to serve personal notice of the acknowledgment of February, 1859, upon any one, nor to publish the fact in the gazettes; and if he had caused the acknowledgment to be recorded in the Recorder's office it would have been followed by no legal consequences. Chambers, on the other hand, knew, at least, when he bought and paid his money, that the mortgage had not been discharged of record. He further knew, as matter of law, that under the statute of limitations a renewal of the note was a possible event. He might, and as a prudent man he ought, before concluding his purchase, to have sought out Lent and inquired of him as to whether the note had been renewed in fact. If, on such application, Lent had told him that there had been no renewal, and if, thereupon, Chambers, on the faith of the statement, had closed the trade and paid his money for the land, Lent would have been estopped from setting up the mortgage against the man whom his own false suggestions had misled. Not having pursued that course, however, Chambers must be understood to have bought and taken his conveyance subject to all hazards." [5] Had the plaintiff made any inquiries as to the two mortgages covering the land in question which were on record, as he should have done under the terms of section 19 of the Civil Code, he could have ascertained the facts from the respondent, the owner of the mortgage indebtedness, and had he been misinformed by her as to any such facts, he could have pleaded the same by way of estoppel, but, instead of so doing, he chose the course of attempting to defeat an honest indebtedness and an equitable lien to secure the payment of the same by

an alleged flaw in the respondent's claim, and having so done, the plaintiff must be held to have taken the land subject to all hazards. [6] Again, as said in *Tolman* v. *Smith, supra,* "as long as the statute of limitations has not run, a renewal or extension of the mortgages is not required; they are alive though 'suspended.' And in the second place, the substituted mortgage was executed with the requisite formalities, and as shown by the cases cited below, it will be treated by a court of equity as an extension of the old mortgages to the extent of the debt secured by them." This was a case where additional mortgages were given. The court further said: "The effect of conditional payment of one mortgage by another is to suspend the remedy on the old mortgage until the maturity of the new one. Until such maturity the old mortgage cannot be foreclosed. But if the debt be not paid at maturity the old mortgages revive and have priority over an intervening mortgage to a third person." This principle carries the lien of the respondent back to the date of the execution of the Voorheis mortgage, which was long prior to the inception of any rights acquired by the plaintiff. To the same effect is the case of *Chapman* v. *Hicks,* 41 Cal. App. 158 [182 Pac. 336], where it was held that a judgment quieting title could not be entered until the debt was paid, there having been extensions of time, of which the grantee had notice. In the case at bar the testimony shows the nonpayment of the debt and its renewal by second mortgage. Under such circumstances, we also think the language of the supreme court quoted in *Bank of Suisun* v. *Fisk,* 65 Cal. App. 776 [225 Pac. 8], applicable: "A mortgage secures the debt and not the note or bond or other evidence of it. No change in the form of the evidence or the mode or time or times— nothing short of actual payment of the debt, or an express release—will operate to discharge the mortgage. The mortgage remains a lien until the debt it was given to secure is satisfied, and is not affected by a change of the note or giving a different instrument as an evidence of the debt, or by a judgment at law on the note merging the original evidence of indebtedness." The giving of the second note in this case, as we have stated, did not change the indebtedness. It only postponed the time when action might be had to foreclose the mortgage given to secure its payment, and

77 Cal. App.—44

in this case, so long as the debt remained alive, if necessary to protect the rights of the mortgagee, equity would set aside the release procured in the manner and under the conditions disclosed by the record and award foreclosure. (19 R. C. L., sec. 236; *Kern* v. *Hotaling,* 27 Or. 205 [50 Am. St. Rep. 710, 40 Pac. 168].)

The judgment of the trial court is affirmed.

Hart, J., and Finch, P. J., concurred.