[Civ. No. 47634. Second Dist., Div. Four. July 13, 1976.]

AMERICAN MEDICAL INTERNATIONAL, INC.,
Plaintiff and Respondent, v.
JACK D. FELLER et al., Defendants and Appellants.

COUNSEL

Xanthos, Carloni & Pellegrino and August G. Carloni for Defendants and Appellants.

Robert D. Wilner for Plaintiff and Respondent.

OPINION

JEFFERSON (Bernard), J.—Plaintiff, American Medical International, Inc., a California corporation, sought partition of certain real property through judicial sale. Named as defendants were their coowners, Jack D. Feller and Mollie P. Levin. Defendants answered the first amended complaint, denying that plaintiff had grounds for the relief sought by denying some of plaintiff's allegations and alleging certain affirmative defenses. The cause was submitted to the trial court for decision pursuant to a stipulation of facts.

The trial court found for plaintiff and rendered an interlocutory judgment of partition of real property which provided for the appointment of referees to supervise the sale. Defendants have appealed from the interlocutory judgment; the appeal is properly before us. (Code Civ. Proc., § 904.1, subd. (i).)

From the stipulation of facts, including the exhibits which accompanied the stipulation, and the trial court's findings, we glean the following information: The real property in question consists of land and buildings known as the Westside Hospital, located in Los Angeles. Prior to 1960, the hospital was owned and operated by Denward, Inc., a California corporation. Apparently the hospital was in financial difficulty in 1960. As a result, in furtherance of an investment scheme, Denward transferred a 50 percent interest in the hospital to Bruce I. Hochman, as trustee. In February 1960, Hochman and Denward leased the hospital for a 20-year term (with option to renew at the end of that time) to W B & H, Inc., a California corporation. The annual rental for the first 10 years was $153,000, and for the second 10 years was $132,000.

It was contemplated by the lessors that the net rental receipts—that sum available after payment of the first trust deed note (an estimated

amount of $72,000)—would be payable to persons investing in the property. The plan devised by Denward was that investors would be solicited to purchase undivided interests of not less than .25 percent of the 50 percent controlled by Hochman as trustee for such investors.

In April 1960, Hochman duly applied to the State of California Commissioner of Corporations for a permit to sell these undivided percentage shares in the real property to certain persons, including some to whom the hospital was indebted, and also staff doctors of the hospital. In his application for the permit, Hochman declared that the market value of his 50 percent interest was $600,000. The application, in setting forth the investment plan, included the following statement: "Purchasers shall waive their statutory right to partition the realty, except that the right to partition may be available to the prospective purchasers thirty (30) days after the trust deed holders on said realty shall file a Notice of Default in payments on the trust deed."[1] The permit was issued.

Defendants Feller and Levin, along with other investors, received grant deeds in 1960 from Hochman. The Feller deed recites that they (Jack D. Feller and Eudice M. Feller, husband and wife)[2] were granted a "one-half of one percent undivided interest" in the described real property (the Westside Hospital), and the Levin deed recites that she was granted an "undivided three-quarters of one percent interest" in the same property. The stipulation of facts sets forth that these grant deeds "were executed pursuant to an application filed with the California Commissioner of Corporations. . . ." Examination of the contents of the grant deeds issued to defendants, a part of our record, reveals that the waiver of the right of partition was not contained therein.

The record reveals that there was recorded in the office of the County Recorder of Los Angeles County in November 1960, a document that sets forth the terms of agreement between Hochman, as trustee, and Denward, with reference to the operation of the property pursuant to the investment plan. The recorded agreement does not refer to the investors' "waiver of the right of partition," as expressed in Hochman's application for a permit to sell undivided interests in the real property, but does recite that "HOCHMAN, as trustee, has applied to the Commissioner of

---

[1] The record does not reveal any filing by trust deed holders of any notice of default in payments on the trust deed.

[2] Jack D. Feller had succeeded to his wife's joint-tenancy interest at the date of this litigation.

Corporations of the State of California and has obtained a permit to sell and dispose of the 50% undivided interest in said real property standing in his name as trustee in undivided interests of not less than ¼ of 1%."

An additional party to this recorded agreement was a partnership known as INVESCO Associates, identified as the owner of 100 percent of the capital stock of Denward. The recorded agreement provided that Denward and its grantees and successors-in-interest were obligated to pay off the trust deed encumbrance and hold Hochman, the trustee, and his grantees and successors-in-interest harmless in the event of a default under the terms of the trust deed. The Denward obligation on the trust deed note was thus made to inure to the benefit of the investors who purchased from Hochman, the trustee, undivided interests in the hospital property.

The factual stipulation states that, on or about January 1970, plaintiff acquired for value the undivided 50 percent interest remaining with Denward, and that in 1972, plaintiff acquired for value an undivided 48.75 percent interest of the interest of which Hochman had been trustee. Defendants Feller and Levin apparently refused to sell their undivided interests to plaintiff

In their answer to the first amended complaint, defendants alleged as a defense that partition of the real property by sale was banned by a waiver of the right of partition. Defendants also asserted as a defense that at the time they obtained their interests in the real property, it was understood by all coowners of the property that the property had been leased until 1980, thereby assuring a long-term, secure investment for those purchasing undivided interests in the property.

The stipulation of facts sets forth that the parties to the action agree that physical partition is not possible; and that plaintiff now holds a 98.75 percent undivided interest in the premises, while the defendants hold, between them, a 1.25 percent undivided interest.

Among the findings of fact made below is finding number 7, which recites: "That the successors in interest to BRUCE I. HOCHMAN, Trustee, namely, the Defendants, JACK D. FELLER and MOLLIE P. LEVIN and the Plaintiff, AMERICAN MEDICAL INTERNATIONAL, as to 48.75% only, had a restrictive right in which to seek partition. Such right was waived in the application by BRUCE I. HOCHMAN, as Trustee for purchasers, to the

Commissioner of Corporations dated April 19, 1960, except that the right of partition would be available to the Defendants, JACK D. FELLER and MOLLIE P. LEVIN and the Plaintiff, AMERICAN MEDICAL INTERNATIONAL, as to 48.75% only, in the event the trust deed holders on said real property shall have filed a notice of default in the payments of the deed of trust and that default was not cured for a period of thirty (30) days."

We turn now to a discussion of the legal principles applicable to partition of real property. The right of a coowner to seek partition is governed by statute. (Code Civ. Proc., § 752 et seq.) An action for partition is considered a special proceeding (*Waterman* v. *Lawrence* (1861) 19 Cal. 210 [79 Am.Dec. 212]), but it is also an equitable proceeding to which principles of equity apply (*Akley* v. *Bassett* (1922) 189 Cal. 625 [ 209 P. 576]; *Penasquitos, Inc.* v. *Holladay* (1972) 27 Cal.App.3d 356, 358 [103 Cal.Rptr. 717]).

The basic statutory provision is section 752 of the Code of Civil Procedure which provides, in pertinent part, that "[w]hen several cotenants own real property . . . an action may be brought by one or more of such persons, . . . for a partition thereof according to the respective rights of the persons interested therein, and for a sale of such property, or a part thereof, if it appears that a partition can not be made without great prejudice to the parties."

It has been said in the decisional law that "a cotenant is entitled to partition as a matter of absolute right; that he need not assign any reason for his demand; that it is sufficient if he demands a severance; and that when grounds for a sale are duly established it may be demanded as of right. To grant it is not a mere matter of grace. The only indispensable requirement to its award is that a clear title be shown, and in no event is a partition to be denied because it will result in financial loss to the cotenants." (*De Roulet* v. *Mitchel* (1945) 70 Cal.App.2d 120, 124 [160 P.2d 574].) It is upon this broadly stated principle that plaintiff herein relies in asserting that the judgment of partition rendered below should be affirmed.

However, the stated "absolute right" of a cotenant to partition is subject to certain limitations such as estoppel and similar equitable defenses. In *Asels* v. *Asels* (1919) 43 Cal.App. 574, 578-579 [185 P. 419], we find this statement of the limitation: " 'But we think the decided preponderance of authority supports the proposition, that the general principle of law that the right to partition is absolute must be confined

"in its application to ordinary joint tenancies or tenancies in common, where the right to partition is left to result as an ordinary legal incident of such tenancy, and that it was never intended to interfere with contracts between the tenants modifying or limiting this otherwise incidental right, nor to render it incompetent for parties to make such contracts, either at the time of the creation of the tenancy or afterward." ' "

Thus, one well-recognized limitation is that the right of partition may be waived by contract, either express or implied.

The situations in which the right of partition is so waived are varied in application. In *Miranda v. Miranda* (1947) 81 Cal.App.2d 61 [183 P.2d 61], plaintiff, the former wife of defendant, brought an action for a partition of residential property standing in the names of both parties as joint tenants. As a part of a divorce action, the parties had entered into a property settlement agreement which provided that the family home was to remain in the name of the parties so long as the wife did not remarry and so long as the property was occupied by her as a home for herself and the children. The former wife sought partition of the property while she was still occupying the home with the children and had not remarried. The *Miranda* court held that the agreement constituted a waiver of the right of either party to partition the property so long as the restrictive conditions existed.

Similar to *Miranda* is the case of *Schwartz v. Shapiro* (1964) 229 Cal.App.2d 238 [40 Cal.Rptr. 189]. In *Schwartz,* the two parties purchased real property as coowners and executed a written agreement that provided that one party would not sell his one-half interest without giving the other coowner the right to purchase it at a price not in excess of the original purchase price. The original purchase price was $143,000, which appeared to be the fair market value of the property. Without offering to sell his interest to his coowner, plaintiff coowner brought a partition action against the defendant coowner. The *Schwartz* court held that the agreement between the parties had modified the "absolute" right to partition and that neither coowner was entitled to a partition of the property without first offering to sell his interest to the other coowner at the price paid for the property. *Schwartz* held that it was immaterial that as of the time of the partition action, the value of the property had increased from $143,000 to $200,000. (See also *Rowland v. Clark* (1949) 91 Cal.App.2d 880 [206 P.2d 59] (parol agreement between cotenants that one would have a right of possession for life).)

"Implied" waiver of partition has been found where cotenants agreed to a plan designed to develop property over a period of time (*Thomas* v. *Witte* (1963) 214 Cal.App.2d 322 [29 Cal.Rptr. 412]) or invested in property which was subject to a long-term lease with a view toward obtaining a secure source of investment income (*Pine* v. *Tiedt* (1965) 232 Cal.App.2d 733 [43 Cal.Rptr. 184]).

The *Pine* court, in denying the right of partition to a coowner with the largest undivided interest in the land, contrary to the judgment of the lower court, stated that "[the appealing minority] do claim, that knowing the nature of the venture and its purpose—to provide a continuous income to the investors under a long term lease with a corporation organized to operate a sanitarium on land they would acquire—[the coowner] impliedly agreed to waive the right of partition when he executed the lease . . . and conveyed to the investors the undivided fractional interests in the land. There is merit to this contention under the rule that an agreement to postpone partition may be implied where the purpose for which the property was acquired by the parties would be defeated by partition. [Citation.]" (*Pine, supra,* 232 Cal.App.2d 733, at pp. 736-737.) The *Pine* court concluded as a matter of law that there existed on the part of the coowner seeking partition an implied waiver of any right of partition until the term of existing leases had come to an end because "[t]o permit partition would frustrate the very purpose for which the land was acquired by the investors and for which it is now being used." (*Pine, supra,* 232 Cal.App.2d 733, at p. 740.)

In addition to the limitation on the right of partition derived from express and implied waiver by agreement, there is an even wider and more general limitation. This limitation subjects the right of partition to the "requirement of fairness." (*Penasquitos, supra,* 27 Cal.App.3d 356, at p. 358.) The *Penasquitos* case held that partition should be denied to a party who was a lessee of a 99-year lease with an option to buy from 2 coowners involved in a long-term development of real property, and who became a successor-in-interest of one of the coowners, when that party sought a forced sale of the property through a partition action in an effort to take advantage of the remaining original coowner.

The *Schwartz* case indicates that the element of unfairness which precludes an absolute right of partition under various circumstances is derived from the fact that when the court orders a sale of the property in a partition action, it is a sale of the *entire interest* in the property and not

of the individual interests of the coowners. A partition sale thus becomes a "forced sale" in the same sense as would be a mortgage foreclosure sale, a trust deed sale or a sale under execution. The objecting coowner is thus forced to part with his interest in the property, contrary to his expectations which brought into being defenses such as waiver of the right of partition, estoppel or other conditions which make applicable the equitable principle of fairness.

Most of the cases that have denied the right of partition have been cases in which the coowner who is seeking partition was a party to the agreement which restricted the right of partition either expressly or by implication, or was so intimately connected with the transaction that the court concluded that out of fairness his subsequent acquisition of an interest in the property imposed upon him a limitation or obligation not to seek partition as long as the agreement or plan of ownership could only be carried out through a denial of the right of partition.

█ In the case at bench, defendants assert, first, that the circumstances of their original investment in Westside Hospital closely parallel those involved in *Pine,* and thus waiver of partition arose by implication against Denward which retained a 50 percent undivided interest and instituted the long-term investment venture for the purchasers of fractional undivided interests from Hochman, the trustee for the other 50 percent interest in the property. Defendants contend that plaintiff as the successor-in-interest of Denward is bound by the implied waiver of Denward, its grantor. Defendants apparently concede that the express statement concerning waiver contained in the application for a permit to sell fractional interests in the hospital property imposed on Denward no express limitation of a waiver of its right of partition.

Secondly, the defendants argue that the situation revealed by the record before us brings the case within the ambit of *Penasquitos* where there was evidence that partition was being sought to take unfair advantage of defendant Holladay.

We conclude that defendants' assertion with respect to implied waiver of the right of partition has merit. It appears to be uncontroverted that defendants were persuaded to invest on the premise that there would be a long-term lease of the real property which would assure a secure and permanent source of income to them during the life of the lease, regardless of how minor that amount may be, relative to the whole. The

circumstances presented here do closely resemble those found in the *Pine* and *Thomas* cases. Hence, the waiver of the right of partition was not only binding upon the defendants and their coinvestors, but also upon Denward, an original participant in the investment plan as well. Had Denward retained its 50 percent interest in the hospital premises and sought partition against these defendants, the principle of implied waiver of the right to partition would have been fatal to its cause of action.

But here Denward conveyed its interest in the premises to plaintiff, American Medical International, Inc., which is seeking partition against defendants. The instant case thus presents the additional question of whether a successor-in-interest to a coowner who has waived his right to partition either expressly or by implication, is bound by the predecessor's waiver. An additional element is presented in the case at bench because plaintiff not only acquired Denward's 50 percent retained interest, but acquired the interests of the other original coinvestors with defendants.

Defendants argue that the instant case is governed by *Pine*. In *Pine,* the plaintiff Pine became a coowner subsequent to the plan under which various investors entered into the venture and received partial undivided interests in the property. But plaintiff Pine was the contractor selected to build a sanitarium on the land and was fully aware of the purpose of a long-time lease on the property to protect the investors who became owners of various undivided interests in the property. Because of Pine's intimate involvement in the venture, the court imposed upon Pine an implied waiver of any right of partition as he became an investor and obtained certain undivided interests in the property. The *Pine* case, therefore, does not govern the factual situation found in the case at bench.

But neither does *Pine* hold that a successor-in-interest from a coowner whose right of partition has been waived takes such interest free from the restriction on the right of partition. In the early case of *Middelcoff* v. *Cronise* (1909) 155 Cal. 185, 189 [100 P. 232], the California Supreme Court observed that "the universally accepted doctrine [is] that one cotenant cannot by a conveyance of his interest in a portion of the property held in common, etc., prejudice the rights of his cotenants. The grantee or successor of such a cotenant simply steps into the shoes of his grantor, subject to all the rights of the other cotenants and their successors as to partition. For all purposes of partition, the whole

property originally held in common by the cotenants, . . . continues to be a unit . . . just as if no change in the ownership of any interest therein had occurred, . . ." The *Middelcoff* rule was enunciated in a situation in which a successor to a coowner of one parcel sought to join in a partition complaint against the remaining coowner, a partition action with respect to other parcels in which the remaining coowner of the one parcel had no interest.

*Middelcoff* is to be compared with *Harrison v. Domergue* (1969) 274 Cal.App.2d 19 [78 Cal.Rptr. 797, 37 A.L.R.3d 955]. In *Harrison,* the original cotenants had agreed among themselves that each would have the "right of first refusal" of the others' interests, and that such right would be binding on successors of the original cotenants. All of the original cotenants' interests passed to others and, subsequently, an action for partition was brought by one successor cotenant. The *Harrison* court construed the intent of the original cotenants, as set forth in their written agreement, to be that of retaining for themselves "control of the admission of new coowners," and concluded that that objective would no longer be served by allowing successors-in-interest to enforce the original agreement against other successors-in-interest; the court found the waiver of the right of partition to be enforceable only by the original cotenants, although the agreement stated that the waiver was to be binding on all successors.

*Harrison,* however, is distinguishable in principle from the rule enunciated by *Middelcoff* since, in *Harrison,* there was *no* remaining *original* coowner seeking to assert a waiver-of-partition defense against a successor-in-interest of an original coowner. The *Harrison* court reasoned that "[t]he apparent purpose of the original parties—to retain for themselves control of the admission of new co-owners—would not be served by extending the operation of the agreement far into the future. That purpose would continue to have validity only as long as the original parties, or one of them, lived and continued in ownership. *So long as the covenant was binding upon successors at the instance of any of the still-living original parties, its purpose would be fulfilled.*" (*Harrison, supra,* 274 Cal.App.2d 19, at p. 23.) (Italics added.)

In the case at bench, defendants Feller and Levin, unlike the defendants in *Harrison,* are *original* coowners seeking to carry out the purpose of the original investment venture by asserting a waiver defense to the partition action brought by a successor-in-interest of their original coowners.

The *Middelcoff* rule, followed by the *Harrison* dictum, applies to the factual situation presented in the case at bench to permit a defendant, a remaining original coowner of property, to assert against plaintiff, a successor-in-interest of another original coowner, the defense of waiver of the right of partition which could be asserted against defendant's original coowner, had the latter brought a partition action against defendant.

Plaintiff asserts that it acquired its 50 percent interest from Denward for value and its 48.75 percent interest from the grantees of Hochman for value. The conclusion suggested is that these acquisitions for value avoid the defense of waiver of the right of partition, assuming that such defense would have been available to defendants against Denward and the grantees of Hochman. But there is no assertion by plaintiff that its acquisitions of undivided interests in the hospital property were *without notice* of any limitations on its grantors of the right to partition.

The stipulation of facts recites that the plaintiff, "on or about January of 1970, acquired *for value* an undivided 50% interest and the predecessor of said interest was DENWARD, INC. That thereafter approximately in 1972, the Plaintiff acquired *for value* an undivided 48.75% interest in which the predecessor in interest was BRUCE I. HOCHMAN." But the stipulation of facts contains no statement that these acquisitions for value were without notice of any express or implied waiver of the right of partition.

Neither do the trial court's findings in the instant case tell us that plaintiff acquired its 50 percent interest from Denward without notice that Denward had either expressly or impliedly waived its rights to partition for the duration of the 20-year lease on the property. In finding number 7, the trial court states that plaintiff, as to the 48.75 percent interest obtained from Hochman, the trustee, "had a restrictive right in which to seek partition. Such right was waived in the application by BRUCE I. HOCHMAN, as Trustee for purchasers, to the Commissioner of Corporations dated April 19, 1960, . . ." Finding number 7 appears to suggest that plaintiff's acquisition of the interests of defendants' coinvestors was *with knowledge* of the limitation on the right of partition.

Although neither the stipulation of facts nor the trial court's findings of fact gives any hint as to whether plaintiff's acquisition of Denward's 50 percent retained interest in the hospital property was with knowledge of the implied waiver by Denward of its right of partition for the duration

of the lease, nevertheless, we hold, as a matter of law, that plaintiff's acquisition of the Denward interest was with knowledge of the limitation on Denward of the right to seek partition arising from the lease and investment scheme, engineered by Denward, and by reason of which defendants acquired their undivided interests in the hospital property.

The principle is well settled that once an instrument that affects real property is recorded, all persons who later acquire any interest in the property are conclusively presumed to have constructive notice of the contents of the recorded document. (Civ. Code, §§ 1213-1215, 2934, 2952; *Dexter* v. *Pierson* (1931) 214 Cal. 247 [4 P.2d 923].) In the case at bench, the agreement between Denward and Hochman relating to the investment scheme with respect to the hospital property was recorded in 1960. This recorded document recites that Hochman, as trustee, "has applied to the Commissioner of Corporations of the State of California and has obtained a permit to sell and dispose of the 50% undivided interest in said real property standing in his name as trustee in undivided interests of not less that ¼ of 1%." Did this recorded document give constructive notice to plaintiff of the contents of Hochman's application to the Commissioner of Corporations which set forth the agreement of waiver of the right of partition?

Although a subsequent party who acquires an interest in real property has constructive notice of the contents of a recorded document, it is not clear that such party has constructive notice of the content of other documents referred to in the recorded document. The law is clear that circumstances such as possession of property by another requires a party acquiring an interest in property to investigate, and the party is chargeable with whatever knowledge would be gained by such investigation. (Civ. Code, § 19; *Pacific Gas & Elec. Co.* v. *Minnette* (1953) 115 Cal.App.2d 698 [252 P.2d 642]; *Del Giorgio* v. *Powers* (1938) 27 Cal.App.2d 668 [81 P.2d 1006].) Although no decided case has been called to our attention which has imposed this same burden of investigating a document referred to in the recorded instrument (see *Craig* v. *Dinwiddie* (1926) 77 Cal.App. 681 [247 P. 516] (two mortgages of record and neither shown as having been paid or satisfied, held sufficient to require a person acquiring an interest in the property to investigate the extent of the obligations secured)); such an extension of the rule requiring reasonable investigation of suspicious circumstances seems reasonable. Accordingly, we hold that plaintiff in the instant case had constructive notice of the waiver-of-partition agreement set forth in Hochman's application to the Commissioner of Corporations.

Since we hold that plaintiff had constructive notice of the *express* limitation on the right to seek partition accepted by the defendants and other investors who acquired their undivided interests in the hospital property from Hochman, it follows that plaintiff was put upon inquiry to determine whether Denward's 50 percent retained interest became subject to an implied waiver of a right of partition. A reasonable inquiry would have led plaintiff to obtain a legal opinion setting forth the principle of real property law that the right of partition is subject to defenses of express and implied waiver and equitable defenses such as estoppel. We thus hold that plaintiff is precluded from a right of partition against defendants because of plaintiff's actual notice of the express waiver of the right of partition by plaintiff's grantors who were successors-in-interest of Hochman—stated in the trial court's finding number 7—and because of plaintiff's constructive notice of the waiver by Denward of its right of partition by virtue of the recorded agreement between Denward and Hochman.

But even if we were to assume that the silence of the trial court's findings of fact on the subject of plaintiff's notice or lack of notice of the implied waiver imposed on Denward's right of partition precludes us from making a determination with respect to the issue of notice, plaintiff is still precluded from recovery, as indicated previously, by application of the *Middelcoff* rule. ■ Under this rule of law, a successor to the interest of one original coowner can fare no better in partition against the other *original coowner* than the transferring coowner. Under the law of partition, a purchaser of a partial interest in real property must expect that there may exist a limitation on the right of partition between his grantor as one of the original coowners and the remaining original coowner.

The *Middelcoff* rule, that a successor-in-interest of a coowner of an undivided interest must stand in the shoes of his transferor when seeking partition against an original coowner with his transferor, is based upon principles of fairness. It prevents a coowner from doing indirectly what cannot be done directly. It protects the original coowner against whom partition is sought from being forced to lose his undivided interest contrary to the agreement under which the undivided interests were obtained. In the case at bench, the undivided interests were created with the understanding that partition would be precluded until the 20-year lease on the hospital terminates, to wit, in 1980.

The judgment appealed from is reversed, with direction to the trial court to enter judgment for defendants. Each party is to bear its own costs on appeal.

Kingsley, Acting P. J., and Dunn, J., concurred.

A petition for a rehearing was denied July 30, 1976, and respondent's petition for a hearing by the Supreme Court was denied October 6, 1976.