**In re Sinisha P. CHENICH, Debtor.**

**Eric WOLF, Trustee, Appellee,**

**v.**

**William F. MAHRDT and Gloria F. Mahrdt, Appellants.**

**BAP No. SC 87–1249 MoJV.**
**Bankruptcy No. 84–5060–M7.**
**Adv. No. C86–0328–M7.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 23, 1987.

Decided Oct. 5, 1987.

See also, 9th Cir. BAP, 87 B.R. 101.

James C. Mitchell and Kimball, Mitchell & McEntyre, Encinitas, Cal., for appellants.

Jeffry A. Davis and Cray, Cray, Ames & Frye, San Diego, Cal., for appellee.

Before: MOOREMAN, JONES and VOLINN, Bankruptcy Judges.

## OPINION

By this appeal the creditors/appellants seek to set aside the judgment of the trial court granting summary judgment to the trustee in an action to avoid a transfer under section 547(b).

## FACTS

Both parties agree that the facts in this case are not in dispute. The debtors ("Chenichs") owed various sums of money to the appellants ("Mahrdts"). The debt was evidenced by six promissory notes due on June 1, 1982. Each note was secured by a deed of trust on separate properties located

in California. These deeds were properly recorded in June 1978. After the notes became due, the Chenichs informed the Mahrdts that they could not pay off the notes and offered to deed the encumbered properties back to the Mahrdts in lieu of foreclosure. The Mahrdts did not wish to do this and on June 16, 1983, an oral agreement was entered into by which the Mahrdts would extend the due date on the notes to March 31, 1987 in exchange for an assignment of 50% of the profit realized when the properties were sold. In furtherance of the agreement, this interest in "the one-half of the equity" in the properties was conveyed to the Mahrdts by the execution of six grant deeds dated June 16, 1983. On July 27, 1983, a formal written agreement was signed by both parties setting forth the terms of the extension agreement. This agreement was not recorded and it did not mention the six grant deeds. The Mahrdts did not record the grant deeds until August 24 and 27, 1984.

On November 21, 1984, less than 90 days after the Mahrdts recorded the grant deeds, Mr. Chenich filed a Chapter 7 petition. On May 9, 1986, the trustee/appellee commenced an adversary proceeding to set aside the transfer of the grant deeds as preferential under sections 547(b) and 550 of the Bankruptcy Code. Both parties agreed that the facts were not in dispute and that the issue was a question of law. Both parties moved for summary judgment.

The trial court determined that the transfer for purposes of section 547 had occurred upon the recording of the grant deeds on August 24 and 27, 1984. This transfer was within the 90 days prior to the filing of the debtor's petition. Further, the trial court found that all other elements of a preferential transfer had been established. Based on these findings summary judgment in favor of the trustee was granted and the Mahrdts filed a timely notice of appeal.

## ISSUE

The essential issue before this Panel is whether the trial court erred in holding that the transfer of the grant deeds, for section 547 purposes, occurred on the date they were recorded and not on the date the extension agreement was made.

## DISCUSSION

### I.

The issue before the trial court was on a motion for summary judgment and involved a question of law. This Panel will review a trial court's conclusions of law *de novo. Anderson v. City of Bessemer,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

### II.

Section 547(e) establishes when a transfer of real property is made for the purposes of determining preferential transfers under the Bankruptcy Code. House Report No. 95–595, 95th Cong., 1st Sess. 374 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 89 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787; *see also In re Lewis W. Shurtleff, Inc.,* 778 F.2d 1416, 1420 (9th Cir.1985). Section 547(e)(2)(B) establishes that "a transfer is made ... *at the time such transfer is perfected,* if such transfer is perfected" more than ten days after the transfer takes effect between the parties (emphasis added). To determine when a transfer is perfected, the Bankruptcy Code provides:

> a transfer of real property ... is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee.

11 U.S.C. section 547(e)(1)(A). Thus, the issue of perfection turns on the applicable state law. 778 F.2d at 1420.

The Mahrdts argue that under California law, a subsequent purchaser of the six properties would be on constructive notice from the date the extension agreement was formally entered into (July 27, 1983). Being deemed to have constructive notice, any subsequent purchaser could, therefore, not "acquire an interest that is superior to the

interest of the [Mahrdts]." The California Civil Code section 19 provides:

[e]very person who has actual notice of circumstances sufficient to *put a prudent man upon inquiry* as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact.

Cal.Civil Code Section 19 (West 1982) (emphasis added). The Mahrdts cite three California cases which essentially determined that a subsequent purchaser has constructive notice under section 19 (*supra*) of any extensions or renewals of a mortgage which are contemplated in the original recorded document. *Craig v. Dinwiddie,* 77 Cal.App. 681, 247 P. 516 (1926); *Newhall v. Hatch,* 134 Cal. 269, 66 P. 266 (1901); *Wood v. Wiley,* 136 Cal.App. 197, 28 P.2d 367 (1934).

The issue under 547(e)(1)(A) is whether a bona fide purchaser could "acquire an interest that is superior to the interest of the transferee." A subsequent purchaser with *constructive notice* could not be a bona fide purchaser under 547(e)(1)(A). Thus, perfection occurred if and when a person would be deemed to have constructive notice of the grant deeds.

In the instant case, the deeds of trust securing the original debt were recorded on July 6, 1978. The deeds of trust specifically stated that they secured payment of the notes and "any extensions or renewals thereof." The Mahrdts argue that the language of the recorded trust deeds would "put a prudent man upon inquiry" as to whether any extension agreements existed. The trustee argues that the "any extension" language is not "sufficiently clear and certain to convey the requisite information to put [a subsequent purchaser] on inquiry." The language, "any extension or renewal," although not referring to any specific agreement, at least calls into question whether any such agreements exists. Thus, a "prudent man" would seek to inquire into the existence of an extension. Based on section 19 of the California Civil Code and the specific language in the originally recorded trust deeds, a subsequent purchaser would have constructive notice of the extension agreement. *See American Medical International, Inc. v. Feller,* 59 Cal.App.3d 1008, 131 Cal.Rptr. 270 (1976).

However, having constructive notice of the extension agreement does not in itself establish constructive notice of the grant deeds. A subsequent purchaser would be placed on inquiry notice as to the existence of any extension or renewal agreements. "[B]y prosecuting such inquiry" (as required by section 19, supra), he could then inquire about the extension agreement itself. The extension agreement provides in the pertinent part:

5. It is also agreed between the parties that FIFTY (50) PERCENT of all profits on the sale of any of the following properties, held in conjunction with the promissory notes, will be assigned to WILLIAM F. MAHRDT and GLORIA F. MAHRDT. 1A, 1B, 1C, and 1D. E. Valley Parkway, Escondido, Calif. 3.27 Acres. 2, and 2a. Rock Springs Road, San Marcos, Calif. 7.48 Acres. 3. Elm Street, Escondido, Calif. .92 Acres and Imperial Drive, Escondido, Calif. 5.00 Acres.

The foregoing constitutes the entire agreement between the parties and supercedes any and all prior agreements, whether written or oral.

The extension agreement does not mention or indicate that the grant deeds were issued. Thus, although a subsequent purchaser may have had constructive notice of the extension agreement, nothing in the agreement would put a prudent man on inquiry of the existence of the grant deeds. Without constructive notice of the transfer of the grant deeds, a subsequent purchaser would acquire an interest that is superior to the Mahrdts'.

The Mahrdts argue in their reply brief that the extension agreement provides for the assignment of profits, which "come from an equity or ownership interest in real property." The Mahrdts also point out that the extension agreement provides for a joint collection account to receive and disburse rental income from the properties,

with Mr. Mahrdt operating the account to pay taxes, insurance and senior lien holders. The above facts, the Mahrdts argue, would "put a prospective purchaser on notice that [the debtor] has assigned one-half of his equity in the property to the Mahrdts as of July 27, 1983."

This argument is unpersuasive in light of the circumstances. A prospective purchaser would more likely assume that by the agreement the Mahrdts were protecting their original trust deeds and receiving 50% of any sale profits in exchange for extending the original notes. The Mahrdts' argument also fails in view of the express language providing that the terms of the extension agreement "constitute the entire agreement between the parties." Thus, a prudent man would not be placed on inquiry notice that, in addition to the extension agreement, six grant deeds conveying a one-half interest in the properties had been executed and transferred to the Mahrdts.

Because a subsequent purchaser of the properties would not have constructive notice of the conveyance of the unrecorded grant deeds, the trial court was correct in finding that perfection did not occur until the deeds were recorded on August 24 and 27, 1984. This being the case, the transfer was within 90 days prior to the filing of the petition.

### III.

■ The Mahrdts argue in the alternative that by granting the extension, an equitable lien was created and that "a bona fide purchaser could not acquire an interest senior to theirs in such equity." The Mahrdts cite no authority for this proposition. Further, the Mahrdts have not filed any action seeking to have an equitable lien imposed upon the properties.

Even if an equitable lien was established, the trustee as a hypothetical bona fide purchaser could avoid the unrecorded transfer. 11 U.S.C. section 544(a)(3). Also, it is recognized that a trustee "takes title to the real property free from all equitable liens." *In re Marino*, 49 B.R. 600, 603 (N.D.Cal.

1985) (citing *Stepp v. McAdams*, 88 F.2d 925, 928 (9th Cir.1937)).

### IV.

The Mahrdts next argue that the trustee failed to show that the transfers enabled them to receive more than they would have received in a Chapter 7 case. This issue was not designated as an issue on appeal and it was not contested at the hearing on the matter. In any event, the debtor lists assets of approximately $600,000 and liabilities at over $1,600,000. By retaining the transfer of the grant deeds, the Mahrdts would have received 100% of their claim against the profits from the sale of the properties.

### V.

■ Finally, the Mahrdts argue that the transfers were not voidable because they were a "contemporaneous exchange for new value given to the debtor" pursuant to section 547(c)(1) of the Bankruptcy Code. In determining whether a transfer is substantially contemporaneous with the new value given, the same definition of "transfer" is to be used. For purposes of the preference section, the transfer (as set forth in Section II. *supra*), occurred on August 24 and 27, 1984. The Mahrdts granted the debtor his four-year extension of the notes on July 27, 1983, over 1 year earlier. Under the Bankruptcy Code, the transfer does not appear to be substantially contemporaneous and the Mahrdts' argument must fail.

Further support for holding the subject transaction avoidable under section 547 of the Bankruptcy Code can be found in those cases which recognize that although a transaction may involve "multiple transfers," so long as one transfer occurs within the presumptive insolvency period, the transaction is avoidable as a preference. *E.g. In re Walters*, 61 B.R. 426, 430–31 (Bankr.D.Mont.1986); *In re R & T Roofing Structures*, 42 B.R. 908, 912–13 (Bankr.D. Nev.1984). In the instant case, it is clear that the execution of the grant deeds as well as the extension agreement were both transfers of an interest in the subject prop-

erty. These transfers were outside the ninety day period. However, the recording of the grant deeds within the presumptive insolvency period also constitutes a transfer and may be avoided by the trustee.

For the above reasons, the decision of the trial court is AFFIRMED.