Filed 8/6/13  Lau v. Lau CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DAIVD LAU,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DORA LAU,<br><br>    Defendant and Appellant. | B241939<br><br>(Los Angeles County<br>Super. Ct. No. BC435921) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Elizabeth Allen White, Judge.  Affirmed.

Law Offices of Larry Fabrizi, Larry Fabrizi for Defendant and Appellant.

Wong & Mak, Steven W. Hashimoto for Plaintiff and Respondent.

_____

Appellant contends that the trial court erred by ordering partition of a property. She argues that the court should have found that the right to partition was waived. Because substantial evidence supported the conclusion that there was no waiver, we affirm the interlocutory judgment ordering partition.

### Factual and Procedural Background

Plaintiff and respondent David Lau is the brother of defendant and appellant Dora Lau. At the time of trial in this matter, David was 54 years old and Dora was 61.[1] David initiated this action in April 2010, and it went to a bench trial in April 2012.

The operative second amended complaint sought, inter alia, partition of the real property located at 2901 North Beverly Glen Boulevard in Los Angeles (the property). A two-story house sits on the property.

The property was purchased in 1991 with funds from David and Dora's parents, Lau Tung and Tse Yuen Hen. Dora lived with her sons in the house for a while, and she and one son continue to use the house on occasion. David and his parents also stayed at the property from time to time. Title to the property was held by the family at the time of the parents' death, when it passed to David and Dora. Title is currently held by Dora, as the trustee of a family trust, and by David, with each having a one-half interest as tenants in common.

Dora testified at trial that her and David's parents decided to purchase the property so that the family would have a home in the United States as well as an American location for the operations of the family company, Crown Records. Crown Records was a once-successful Hong Kong-based music company started by the parents in the 1950's. Crown Records, Inc. USA was formed to distribute audio and video recordings produced by Crown Records.

---

[1]     For ease and clarity of reference, we refer to David and Dora by their given names in this opinion, with no disrespect intended. Further, we note that in 2010 David legally changed his surname from "Lau" to "D'I," although in the record and appellate briefs he is generally referred to by his former surname.

2

Prior to 1991, Crown Records, Inc. USA had a distribution center located at another residential address in Los Angeles. Dora introduced exhibits at trial showing that since 1991 the business address used for the United States-based company was that of the subject property. Records, tapes, and other Crown Records materials were stored in the garage and living room of the house and distributed from the house to various locations throughout the United States. After the death of the parties' mother in 2007, however, the company effectively ceased business. There had been no sales of recordings since 2008. At the time of trial, the California Secretary of State website listed Crown Records, Inc. USA as suspended.

David worked for Crown Records in Hong Kong, helping his parents run the business, since 1992. After the death of the mother, Dora initiated a lawsuit in Hong Kong, contending that the company had been mismanaged by David, and seeking to recover Crown Records' property and publishing rights. She testified that her reason for filing the lawsuit was to gain control of Crown Records and continue to distribute its products in the United States. David, on the other hand, testified that Crown Records had been dissolved and that there were no plans to resume business in the future.

After hearing the evidence and argument presented in this matter, the trial court issued an oral statement of decision. The trial court stated that, although the right to partition can be waived, there was no basis to find waiver given the facts of this case. It found that the parents purchased the property not just to house Crown Records products, but also for the purpose of having a residence in the United States for the family. There was no clear intent that the property would be used in perpetuity for the Crown Records business. Furthermore, Crown Records, Inc. USA was not in good standing in California and had no sales since 2008, so the business did not appear to be viable. The property's former use as a center of operations for the American company was incidental to its use as a residence. Accordingly, the trial court found that the property was subject to partition.

The court entered an interlocutory judgment in favor of David in May 2012. The interlocutory judgment provided that David was entitled to partition and that the property

3

would be sold to a third party unless the parties could reach an agreement as to its disposition.

## DISCUSSION

Dora appeals from the interlocutory judgment. An interlocutory judgment such as this one, which determines rights and interests of the parties and directs that partition be made, is appealable. (Code Civ. Proc., § 904.1, subd. (a)(9).)

"The primary purpose of a partition suit is, as the terminology implies, to partition the property, that is, to sever the unity of possession." (*Schwartz v. Shapiro* (1964) 229 Cal.App.2d 238, 257.) A co-owner of property held by concurrent interests has the right to partition unless barred from doing so by a valid waiver. (Code Civ. Proc., § 872.710, subd. (b).) "'Partition is a remedy much favored by the law. The original purpose of partition was to permit cotenants to avoid the inconvenience and dissension arising from sharing joint possession of land. An additional reason to favor partition is the policy of facilitating transmission of title, thereby avoiding unreasonable restraints on the use and enjoyment of property.'" (*LEG Investments v. Boxler* (2010) 183 Cal.App.4th 484, 493.)

Dora argues on appeal, as she did below, that the trial court should have found that the right to partition was waived. Where the purpose for which the parties acquired the property may be defeated by partition, an agreement to postpone partition may be implied. (*Pine v. Tiedt* (1965) 232 Cal.App.2d 733, 737.) "Most of the cases that have denied the right of partition have been cases in which the coowner who is seeking partition was a party to the agreement which restricted the right of partition either expressly or by implication, or was so intimately connected with the transaction that the court concluded that out of fairness his subsequent acquisition of an interest in the property imposed upon him a limitation or obligation not to seek partition as long as the agreement or plan of ownership could only be carried out through a denial of the right of partition." (*American Medical International, Inc. v. Feller* (1976) 59 Cal.App.3d 1008, 1016; see also *Pine v. Tiedt, supra,* 232 Cal.App.2d at pp. 738-739 ["[T]he rule applied is that partition cannot be had without the consent of all parties where it would conflict with a prior agreement of the parties as to the use of the property"].)

4

Dora contends that a finding of waiver was required because the property was bought for the purpose of serving as the American center of operations for Crown Records. She argues that the court would have found waiver if it had not improperly admitted evidence favorable to David and excluded evidence favorable to Dora. The trial court's evidentiary rulings are reviewed for abuse of discretion. (*Landale-Cameron Court, Inc. v. Ahonen* (2007) 155 Cal.App.4th 1401, 1407; *In re S.A.* (2010) 182 Cal.App.4th 1128, 1135; *Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 140, fn. 3.)

We agree with Dora that the trial court abused its discretion on a number of evidentiary rulings. The trial court should have admitted into evidence exhibit 68, which was a copy of the document initiating the legal action in Hong Kong (similar to a complaint), rather than excluding it on the basis of a relevancy objection. Both parties testified at length about the Hong Kong litigation, and David was allowed to introduce two documents from the Hong Kong litigation pertaining to the "w[inding] up" of Crown Records. Dora should have been allowed to introduce equally relevant documents. We also agree that Dora should have been allowed to testify whether she believed that Crown Records could continue as a going concern, as David was allowed to testify that Crown Records had been "wound up" and "dissolved."

Nevertheless, we find no reason to reverse the judgment. Following a bench trial, findings on questions of fact are reviewed under the substantial evidence standard of review. (*Brewer v. Murphy* (2008) 161 Cal.App.4th 928, 935.) "Where [the] statement of decision sets forth the factual and legal basis for the decision, any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision." (*In re Marriage of Hoffmeister* (1987) 191 Cal.App.3d 351, 358.)

Viewing the entirety of the evidence, and taking into account that the trial court should have allowed further evidence submitted by Dora, there is no question that the judgment was still supported by substantial evidence. The trial court's erroneous evidentiary rulings were not prejudicial. Dora was allowed to testify that she sought to

5

gain control of Crown Records in Hong Kong and that if she did so she would distribute Crown Records products in the United States. Thus, the excluded evidence was largely cumulative.

Furthermore, the trial court did not err by declining to stay this action pending the conclusion of the Hong Kong litigation. The trial court's decision did not hinge on the status of the Hong Kong lawsuit. Dora acknowledged that the property is not an asset of Crown Records and, as noted by the trial court in its statement of decision, the property was not leased to Crown Records. Rather, the trial court found that the primary use for the property was as a residence, and that the business use was merely incidental to that. David testified that he never agreed that the property could be used indefinitely by Crown Records. Moreover, except for purposes of storage, the property had not been used by Crown Records since 2008.

That there existed a chance that Dora could succeed in the Hong Kong litigation and revive a currently defunct company was not a sufficient reason to deny the much favored remedy of partition. The trial court found that the property was not unique to the conduct of a business. Prior to the purchase of the property another residence had been used to house and distribute Crown Records products. If Dora does succeed in reviving the business, she can find any number of structures just as well suited to the business of Crown Records as the subject property.

In sum, the trial court's decision is abundantly supported by substantial evidence. [2]

---

[2]    Dora's argument that the judgment violated Code of Civil Procedure section 872.730, which applies to property held by a partnership, is frivolous. The parties in this case stipulated that the property was held by each as tenants in common. There was no evidence that the property was held by a partnership—David's response to a vague question about his "partner in the property" did not somehow create a partnership out of thin air.

6

## DISPOSITION

The interlocutory judgment entered on May 2, 2012, is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.</u>

BOREN, P.J.

We concur:


ASHMANN-GERST, J.


FERNS, J.*

_____

*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice
pursuant to article VI, section 6 of the California Constitution.

7